[S. F. No. 15838.   In Bank.—July 27, 1938.]

FRED N. COATS, Respondent, v. GENERAL MOTORS
    CORPORATION (a Corporation), Appellant.

Fitzgerald, Abbott & Beardsley for Appellant.

Pillsbury, Madison & Sutro, Donahue, Hynes & Hamlin, Alfred Sutro, Eugene M. Prince, Eugene D. Bennett and O. D. Hamlin, Jr., for Respondent.

SHENK, J.—This is an appeal by the defendant from a judgment on a verdict awarding $148,980.06 to the plaintiff in an action for the value of stock claimed to have been wrongfully withheld. The case was twice tried. The first trial resulted in a directed verdict. From the judgment entered thereon both parties appealed. That judgment was reversed on the ground that the evidence and the inferences fairly to be drawn therefrom required the factual issues to be decided by the jury. (*Coats* v. *General Motors Corp.*, 3 Cal. App. (2d) 340 [39 Pac. (2d) 838].) The issues of fact were submitted to the jury on the second trial in compliance with the decision on appeal. The only question to be determined is whether the evidence in the present record is sufficient to support the verdict.

The amount of the verdict is not questioned. It is not contended that the same evidence, which on the former appeal was held to require the submission of the case to the jury, was not presented on the subsequent trial. It is the defendant's contention on this appeal that the additional evidence, introduced at the second trial, considered with the plaintiff's evidence, now requires a reversal and a direction that judgment be entered for the defendant.

The opinion on the first appeal is referred to for a more extended recital of the facts.

In 1918 the plaintiff was employed by Willys Overland as branch manager at an annual salary of $15,350. He severed that connection to accept employment with Chevrolet Company at $7,500 a year and participation in the General Motors Corporation bonus plan. That plan contemplated distribution of corporation stock "as a reward to certain of its employees, including employees of its subsidiary companies" (of which Chevrolet Company was one), "who have contributed to its success in a special degree by their invention, ability, industry, loyalty, or exceptional service and whom it is deemed desirable to have interested as stockholders and partners in the corporation's prosperity." In addition to such "special service" bonuses, "conspicuous service" bonuses were awarded to "those who have contributed most in a general way to the corporation's success." A bonus fund was established by setting aside a percentage of the corporation's net earnings which was invested in common stock of the corporation. In December of each year, after considering

the recommendations made by division heads, the president of the defendant corporation submitted to the finance committee his list of employees who were in line for bonus awards. In January, awards were made by the finance committee of common stock for services rendered the preceding year. When the awards were made certificates for the number of shares allotted were issued in the names of the employees so rewarded. Certificates representing one-fourth of the award were delivered immediately. The balance was delivered to the bonus custodian who held it for delivery one-fourth at the end of one year, one-fourth at the end of two years, and the last fourth at the end of three years. The beneficiary of the award was required to execute an irrevocable power of attorney which would enable the bonus custodian to retransfer the stock to the corporation should the employee leave the service. A system of accounting was used by which credits were established and accumulated monthly at the rate of one-forty eighth of the total amount of undelivered stock. The plan expressly provided that ''if a beneficiary leaves the service of the corporation of his own volition, or is dismissed because of unsatisfactory service, (of which the executive committee shall be the sole judge), that portion of his bonus represented at the time by the debit balance of his account shall revert to the bonus fund, and a certificate for the portion of his bonus represented by the total credits in his account shall be delivered to the beneficiary free from all restrictions, provided, however, that no fractional share shall be issued. Any fractional share to which the beneficiary is so entitled shall be purchased at the then market value thereof out of the money in the bonus fund. All amounts forfeited by such beneficiary shall revert to the bonus fund. Should a beneficiary be dismissed from the service of the corporation for no fault of his own with an entirely satisfactory record (of which the executive committee shall be the sole judge), he may continue a beneficiary under the bonus plan to such an extent as the executive committee may determine. Subject to the rights of the bonus custodian to retain possession of the stock certificates or to transfer the stock as herein provided, an award shall vest the beneficiary with all the rights of a stockholder in the stock awarded, including the right to vote and to receive dividends thereon,

but excepting, however, the right to sell, assign, or pledge his interest in the stock.''

A few months after his employment by Chevrolet the plaintiff was promoted and sent to St. Louis in charge of sales. In 1922 he was made zone sales manager for the Pacific Coast and transferred to California. In 1923 he was elected vice-president of Chevrolet Motor Company of California, and in 1925 he was made regional sales manager over territory comprising seven states. Increases in his annual salary brought it to $21,000. In each year of his service he was awarded a conspicuous service bonus. In August, 1926, the corporation declared a 50 per cent dividend on the common stock which it issued in the form of stock. Under the plan the plaintiff thus became entitled to dividend stock to the amount of dividends declared on the bonus stock previously awarded to him, including that portion thereof not yet delivered. The dividend stock on undelivered bonus stock, however, was treated by the parties and by the court as subject to the same plan for distribution as the undelivered bonus stock.

In December, 1926, on recommendation of R. H. Grant, an officer, and William S. Knudsen, president of the Chevrolet company, the defendant's president, Alfred P. Sloan, Jr., recommended the plaintiff for a 1926 bonus award, which was accordingly made. On the following January 2d, however, upon the plaintiff's arrival in Detroit, he was informed by Mr. Grant of his dismissal. The present action was to recover the value of undelivered dividend and bonus stock, comprising one-fourth of the 1924 bonus award, half the 1925 award, and three-fourths of the 1926 award, with the exception of a fractional share represented by the sum of $41.88 for which the plaintiff receipted on March 30, 1927.

On the second trial as on the former trial there was evidence that the dismissal of the plaintiff by Mr. Grant was made on the latter's own decision, and that the announcement thereof to the plaintiff was accompanied by an admission on the part of Grant that the cause thereof was not dissatisfaction with his services. There is further and independent evidence in the record that the plaintiff's services were considered satisfactory. The defendant contends that the resolution of the executive committee, in the light of the additional evidence produced by it, supplants any inferences which

might be drawn from the contradictory evidence. That resolution states: "Resolved that in view of the fact that the services of Mr. F. N. Coats were terminated January 1st, 1927, because his work had not been satisfactory to the corporation all bonuses due him be cancelled as of that date." We may assume that the jury found that the resolution had in fact been adopted, which under the evidence was also a question for its determination. The resolution was also a part of the record on the former appeal. It was not then considered sufficient to overcome the favorable case presented by the plaintiff. The additional evidence relied upon by the defendant on this appeal consists in part of the views expressed by the individual members of the committee or other executives of the defendant on the matter of their dissatisfaction with the plaintiff's services. Such evidence, and additional evidence on other disputed facts, merely served to continue the conflict in the evidence. It did not overcome as matter of law the effect of the evidence tending to prove that the reason for the dismissal of the plaintiff was not because of unsatisfactory services. It once having been determined as the law of the case that the latter evidence was support for a verdict in the plaintiff's favor, any additional evidence which was merely cumulative or contradictory gave rise only to questions of weight and credibility which were exclusively for the jury. (*Hoffman* v. *Southern Pac. Co.*, 215 Cal. 454, 457 [11 Pac. (2d) 387]; *Andrew* v. *Bankers & Shippers Ins. Co.*, 125 Cal. App. 24 [13 Pac. (2d) 515]; *Gates* v. *Pendleton*, 71 Cal. App. 752 [236 Pac. 365]; *Burns* v. *Jackson*, 53 Cal. App. 345 [200 Pac. 80].) We cannot accede to the defendant's contention that the executive committee's finding that the plaintiff's dismissal was for unsatisfactory services and the additional evidence relied upon by it makes an end of the case. Obviously the crux of the entire controversy is whether the plaintiff was in fact dismissed for unsatisfactory services; in which event alone under the plan was it contemplated that he should be wholly deprived of stock which previously had been awarded to him as compensation for conspicuous services. No contention is made herein that the executive committee passed upon the question of whether the plaintiff's services were satisfactory. Its function was to determine whether or not the *cause of the dismissal* was for unsatisfactory services, and to terminate

or continue the plaintiff's bonus rights accordingly. On the evidence in the present record the jury could conclude that the purported finding of the executive committee was contrary to the fact and that the plaintiff had not in truth been dismissed for unsatisfactory services. ▆ This is not a case which calls for the application adversely to the plaintiff of the rule stated in 6 Cal. Jur., pp. 417, 418 and cases cited and relied on by the defendant, that the decision of the party who must be satisfied by the character of the performance is conclusive upon the employee; nor of the rule next stated in the same text that the decision of a third party or an umpire in whom that power resides is likewise conclusive. In this case the circumstance that the bonus plan purported to constitute the committee the sole judge of the cause of dismissal is unavailing where its finding is contrary to the fact. (*Long* v. *Chronicle Pub. Co.*, 68 Cal. App. 171 [228 Pac. 873]; *Fidelity & Casualty Co. of New York* v. *Eickhoff*, 63 Minn. 170 [65 N. W. 351, 56 Am. St. Rep. 464, 30 L. R. A. 586]; see, also, *Trevellick* v. *Western V. M. Assn.*, 237 Ill. App. 493, 498, 499.)

▆ The defendant urges that nevertheless a reversal should follow from the application of the provisions of the bonus plan which empower the executive committee to say to what extent the employee shall continue as a beneficiary of the plan should he be dismissed from service for no fault of his own with an entirely satisfactory record. An answer to this contention is that those provisions contemplate that there shall be a continuation of the benefits to some extent, which was not the action of the committee in this case. Also in this respect it cannot be said that the plaintiff has not produced proof that he was dismissed ''with an entirely satisfactory record'' and ''for no fault of his own''. The jury was instructed that it must find that these requirements as well had been fulfilled. It must be assumed that on that issue the jury found for the plaintiff. ▆ Furthermore, the legal sufficiency of the plaintiff's evidence in that regard is concluded by the former decision. The law of the case extends to all matters without which the first decision could not have been rendered. (*Davis* v. *Edmonds*, 218 Cal. 355 [23 Pac. (2d) 289].)

▆ The defendant finally contends that the effect of the plaintiff's execution of the receipt of March 30, 1927, was to

release the defendant from any and all demands for further delivery of bonus or dividend stock. This question was determined adversely to the defendant's contention on the former appeal. The receipt was there held to be sufficiently ambiguous in character to support a finding that the plaintiff was receipting merely for the amount due for a fractional share, as in prior similar transactions, and that the receipt did not purport to cover stock awarded and earned but not yet deliverable under the terms of the bonus plan. The question of what was released was open to explanation or elucidation by parol evidence. (*Carpenter* v. *Markham*, 172 Cal. 112 [155 Pac. 644]; *Coats* v. *General Motors Corp.*, *supra*.)

No greater merit may be accorded the contention reiterated on this appeal that the plaintiff's delay in bringing the action precludes him from any recovery under the facts presented. That question also was concluded by the decision on the former appeal.

No error appears in the rulings on the admission of evidence or in the instructions to the jury. They were in accord with the views expressed by the court in its decision on the former appeal. We conclude that the additional evidence introduced on the second trial had no greater effect than to perpetuate the conflict and that there is evidence in the present record which is sufficient support for the jury's verdict.

No other points require discussion.

The judgment is affirmed.

Seawell, J., Houser, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.