Daniel O'MADIGAN, Jr., Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. 10666(3).

United States District Court

E. D. Missouri, E. D.

Sept. 29, 1961.

Carl E. Starkloff and Forrest C. Donnell, St. Louis, Mo., for plaintiff.

McDonald, Barnard, Wright & Timm, St. Louis, Mo., by Herbert E. Barnard, St. Louis, Mo., for defendant.

WEBER, District Judge.

Plaintiff has brought this suit seeking recovery from defendant of certain moneys and stocks alleged to be due and owing by defendant to plaintiff pursuant to a bonus award contract. Defendant filed its answer, admitting for all practical purposes all factual matters set forth in plaintiff's Amended Complaint and denying those matters denominated by defendant as legal conclusions. Subsequently, on January 27, 1960, defendant filed Motion for Summary Judgment, attaching thereto various affidavits, exhibits and depositions. On February 23, 1960, the Court granted plaintiff leave to file counter-affidavits and ordered separation of the issues as to liability and damages and that the liability issue be first tried. Thereafter, various stipulations were filed further setting forth facts of the cause which are uncontested. Time was granted to the parties to file memoranda in support and opposition to defendant's Motion for Summary Judgment, such filing was from time to time extended and the Court subsequently took the cause under submission. Due to the extensiveness of memoranda filed and the supporting testimony in behalf and opposition to the Motion for Summary Judgment, considerable time has been required by the Court to review the matter before it in its entirety.

The undisputed facts here show that plaintiff was continuously employed by defendant or its subsidiary (except during military leave of absence from April, 1942, to June 1, 1945) from January 3, 1927, to July 31, 1953. He occupied various positions in this employment. On June 1, 1945, after his military service, plaintiff re-entered defendant's employ as Pontiac Zone Manager in Memphis, Tennessee. He was promoted to Assistant General Sales Manager of the Pontiac Division in December, 1948, and remained in that position until July 31, 1953, at which time he voluntarily resigned due to health. (Exhibit D–1, plaintiff's letter of resignation, dated July 10, 1953.) Subsequent to plaintiff's voluntary resignation he assumed a Pontiac dealership in St. Louis, Missouri, which he operated from approximately August, 1953, until May, 1954.

Prior to the termination of the Pontiac dealership, plaintiff received inquiries from the Ford Motor Company and Packard Corporation regarding the possibility of his entering the employ of either. Plaintiff contacted officials of defendant relative to this prospective employment. There is dispute as to the exact wording and nature of these conversations, but plaintiff's version is accepted by defendant for the purpose of this Motion. Plaintiff stated that although he knew one Hufstader (a vice president of defendant and in charge of the distribution staff) could not hire for any division except the distribution staff, he, plaintiff, knew that his recommendation carried great weight with defendant and that Hufstader conveyed to plaintiff that he would not recommend him for employment by any division of the defendant. After this latter conversation, plaintiff made no further effort to obtain employment with defendant and thereafter, on June 28, 1954, he entered the employ of the Packard Corporation as Sales Manager and at a salary of $40,000.00 per year plus bonus and other benefits. The Packard Corporation later merged with Studebaker and plaintiff was made General Sales Manager of the Packard Division. His job was the promotion of sales and service of Studebaker-Packard automobiles, parts, accessories and service to the public.

Defendant had a bonus plan which was adopted and amended by the stockholders of the corporation. It originated in 1918 and was modified in 1947 and 1952. For the purposes of this controversy the form and content of the 1947 and 1952 plans are substantially the same in their pertinent parts. The bonus plan was designed to provide incentive and reward to employees who contributed to the success of defendant by their invention, ability, industry, loyalty or exceptional service, and to make them participants in that success. Under the plan, the de-

fendant maintained a "bonus reserve" to which there was credited each year 12% of the net earnings after deducting 5% on net capital, but not in excess of the amount paid out as dividends on common stock for that particular year. The plan further set up a Bonus and Salary Committee with "full power and authority to construe, interpret and administer" the plan. Members of the latter Committee were not eligible for bonus awards and the agreement provided that their decisions were binding on all parties.[1]

The bonus awards in question in this suit cover the years 1950 through 1953. The 1950 award was 377 shares of common stock and $23,008.61 (total award value $40,000); the 1951 award, 260 shares of common stock and $18,854.40 (total award value $32,000.00); the 1952 award, 277 shares of common stock and $19,039.26 (total award value $35,-000.00); and the 1953 award, 159 shares of common stock and $5,278.74 (total award value $15,000.00). The award determinations were made by the Bonus and Salary Committee early in the year following the year for which the award was made.

The 1950-1951 awards contain the following words:

"(d) Delivery of the second and subsequent installments is dependent upon such installments being *earned out* subject to the conditions of paragraph 8 of the General Motors Bonus Plan." (Italics supplied.)

The 1952–1953 awards contain the following words:

"(d) Delivery of the second and subsequent installments is dependent upon such installments being *earned out* subject to the conditions of the General Motors Bonus Plan." (Italics supplied.)

The only change thereby is the latter changing of reference to the Plan rather than the previous reference to paragraph 8 of the Plan. In either situation, paragraph 8 applies.

The receipt which plaintiff signed for these aforesaid awards acknowledged receipt of so many shares and so much

---

1. The applicable portions of the Plan, upon which disposition herein is based are as follows:

"6. The Bonus and Salary Committee shall have discretion with respect to the determination of each bonus award. Recommendations for bonus awards shall be made to the Committee by the person discharging the duties of chief executive officer of the Corporation under such procedure as may from time to time be prescribed by the Committee. * * * Upon final determination of bonus awards by the Committee, each award of $1,000 or less * * * shall be paid at the time of award. Each award of more than $1,000 shall be paid in annual installments of 20% or $1,000, whichever is greater, the first such installment at the time of award, and the remaining installments in January of each succeeding year * * * *if earned out by the beneficiary by continuing service with the Corporation at the rate of 1/12th of the amount of the first installment for each complete month of service* beginning with January of the year of the determination." (Italics supplied above and hereafter.)

"8. (a) A beneficiary whose employment terminates by *dismissal for cause,* of which the Bonus and Salary Committee shall be the sole judge, shall lose any right to earn out his unearned bonus award.

"(b) A beneficiary who *voluntarily terminates his employment shall have no right to earn out his unearned bonus awards, unless and to the extent the Bonus and Salary Committee, in its sole discretion, decides otherwise. In the event of such decision, the beneficiary may earn out his unearned bonus awards, provided that and for so long as such beneficiary to the satisfaction of the Bonus and Salary Committee, refrains from engaging directly or indirectly in activities competitive with the activities of General Motors and from acting or conducting himself in a manner inimical or in any way contrary to the best interests of General Motors.*

"9. If a beneficiary dies, his unpaid and undelivered bonus awards and dividend equivalents shall be paid and delivered to his legal representatives or to the persons entitled thereto as determined by a court of competent jurisdiction, at such times and in such manner as if the beneficiary were living."

cash "constituting in full the installments of his bonus award relating to the" year in question "which were earned out in the year (prior to the year of the execution of the receipt) in accordance with and subject to the terms and conditions of the General Motors Bonus Plan."

Subsequent to plaintiff's voluntary termination of employment, it was recommended by defendant's General Manager of the Pontiac Division that plaintiff be permitted to earn out bonus awards unearned at the date of his resignation. This was in consideration of his past service and further because he became a Pontiac dealer and would further the interests of the corporation. The General Manager's recommendation was approved and the Bonus and Salary Committee passed a resolution adopting the recommendation until further action of the Committee. Plaintiff was notified of the action of the Committee and it was stated therein that in the event he (plaintiff) should enter any other business or become engaged in any other occupation or employment, he should advise promptly. Subsequent to that the Committee made a bonus award to plaintiff for the year in which he had voluntarily terminated his services and he was again advised thereof.

Plaintiff submitted answers to questionnaires supplied by defendant and after his employment with Packard, and later Studebaker-Packard, he so indicated this employment upon the questionnaire. An officer of defendant recommended to the Committee thereafter that plaintiff's right to earn out unearned awards terminate as of July 1, 1954, citing plaintiff's employment in competition with defendant. The Committee on January 3, 1955, adopted the recommendation and ruled that plaintiff "shall lose his right to earn out his unearned bonus awards beginning with July 1, 1954" and plaintiff was informed of this action.

It is defendant's contention that the bonus award is in the nature of a salary increase, that is, it is an award for a particular year based upon the employee's performance in the corporation for the past and in the future. The plaintiff contends that the award vests title or right to the amount of the award and that provisions for subsequent installment delivery relates only to the time of payment and not to the vesting of title therein.

The Court has reviewed the stipulations and the evidence, together with the Bonus Plan itself, and concludes that defendant's contention is correct. It is the Court's conclusion that the bonus award plan is an incentive plan to reward for past services performed and for future services anticipated. The requirement that the awardee refrain from engaging directly or indirectly in competitive activities or conducting himself in a manner inimical or contrary to the interests of defendant gives strength to this conclusion. The fact that the plan recognizes termination of employment by death or otherwise likewise indicates the correctness of this conclusion. Further, the provision that the Bonus and Salary Committee shall have discretion with respect to the award, not only supports this conclusion but, contractually and impliedly establishes discretion and provides for the granting or termination of the awards.

It is the composite conclusion of the Court that under the terms of the Bonus Plan and plaintiff's position therein and thereunder that plaintiff, by voluntarily terminating his services with defendant and by engaging in a rival and competitive business, placed himself in a position inimical to the best interests of the defendant and outside of the benefits of the bonus awards; that when the Committee acted to terminate plaintiff's interests they did so within the provisions of the agreement and their action actually, contractually and finally terminated plaintiff's rights to further participation.

It is this Court's further conclusion that plaintiff's original and continuing employment by defendant was subject to all conditions of the agreement. That while his salary was a matter of recognition or adjustment from time to time, his bonus awards were dependent

**194**

upon the action of the stockholders and the agreement established as a result. This created no vested rights except for the periods it remained in effect and then only under the terms and conditions thereof.

Therefore, an order shall be entered sustaining defendant's Motion for Summary Judgment and judgment shall be entered in favor of the defendant and against the plaintiff.