Joe R. HAINLINE, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION, a Delaware Corporation, Defendant-Appellee.

No. 20690.

United States Court of Appeals, Sixth Circuit.

June 30, 1971.

Joseph Levin, Detroit, Mich. (Dice, Sweeney & Sullivan, Detroit, Mich., on the brief), for appellant.

Donald K. Barnes, Detroit, Mich., Joseph G. Wackerman, Detroit, Mich. on the brief, for appellee; Ross L. Malone, Gen. Counsel, Detroit, Mich., of counsel.

Before PHILLIPS, Chief Judge, and EDWARDS and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This is an action to recover installments of General Motors stock and cash awarded to appellant as bonuses during his employment by the Fisher Body Division of General Motors Corporation pursuant to the General Motors Bonus Plan. After extensive depositions and affidavits were filed, appellee moved for summary judgment, which was granted by the district court. This appeal followed.

At issue is appellant's right to receive portions of bonus awards made in previous years of his employment but yet undistributed as of the date of his resignation effective September 30, 1968. Appellant's position below was that the Bonus Plan constituted a contract between him and the appellee vesting in him a right to receive undistributed portions of bonuses already awarded if his termination of employment was involuntary so long as he was not dismissed for cause.

Appellant resigned because the delicate health of his young daughter necessitated that the family relocate in a warmer climate. He maintains that resignations for such reasons of health have not in the past caused the Committee to deny payment of accumulated bonus awards. The appellee's Bonus and Salary Committee, charged with the administration of the Plan, decided that appellant was not entitled to receive any further disbursements of accumulated bonus cash or stock, a decision that precipitated the present litigation. The parties and the court below apparently assumed that the Committee had decided that the appellant's resignation was "voluntary" so as to cause the loss of any right to receive further disbursements of previously awarded bonuses. The district court's view was that the Plan provided for continuing receipt of bonus payments by resigning employees who rendered "continuing service to the corporation," but that there was no right to receive such amounts as appellant claimed since appellant was not in position to render such continuing service and since the Plan vested discretion to decide such claims in the Bonus Committee. Since in the court's view appellant was as a matter of law not entitled to relief, the motion for summary judgment was granted.

On appeal, appellant contends that the lower court's interpretation of the contract is erroneous and that under the proper view there exists a genuine issue of material fact making summary judgment an inappropriate disposition of the

case. We are in agreement with this view.

There are two sections of the Plan dealing with the manner of payment of bonuses, sections 6 and 8. With respect to the general method of payment of bonuses that have been awarded, section 6 of the Plan provides in pertinent part:

> Upon final determination of bonus awards by the Committee, each award of $1,000 or less (cash or stock of equivalent award value) made prior to January 1, 1968 and each award of $2,000 or less made after December 31, 1967 shall be paid at the time of the award. Each award of more than $1,000 made prior to January 1, 1968 shall be paid in annual instalments of 20% or $1,000, whichever is greater, and each award of more than $2,000 made after December 31, 1967 shall be paid in annual instalments of 20% or $2,000 whichever is greater, the first such instalment at the time of award, and the remaining instalments in January of each succeeding year (until the full amount of the award is paid) if earned out by the beneficiary by continuing service to the Corporation, at the rate of $\frac{1}{12}$th of the amount of the first instalment for each complete month of service beginning with January of the year of the determination. * * *

The district court apparently based its ruling, at least in part, on this section, for it held that any right to "earn out" unearned bonus awards was conditioned upon "continuing service to the Corporation." Since appellant had resigned, it was reasoned he could not have earned his awards by such continuing service. Appellant urges that the district court erred in relying on section 6, arguing that section 8, which does not contain the condition of "continuing service," is controlling. He argues that section 8 governs the payment of bonuses to beneficiaries who are resigning under certain circumstances, including his own resignation for reasons of health of a member of his family. It appears to us that the district court may have

concluded either that section 6 governed entirely, or that "earned out" as used in section 8 must be read as conditioned by the requirement of "continuing service" in section 6. We are unable to agree with either supposition.

Section 6 provides for the general case of awards and payments of bonuses to employees who render continuing service by remaining in the employment of General Motors. The only contingency causing a loss of the right to receive the awards under the provisions of section 6 arises in the case of a beneficiary who has "acted or conducted himself in a manner inimical or in any way contrary to the best interests of the Corporation. * * *" This contingency is also one ground under section 8 for denying or cancelling a determination to allow a resigning employee to retain the right to "earn out unearned bonus awards" regardless of whether the conduct occurred before or after such termination. The condition of "continuing service" in section 6 thus appears to do nothing more than to define the general case of a beneficiary who retains the right to receive his awards as long as he is employed by GM.

Section 8 provides for the disposition of accrued bonus awards not yet paid to employees who leave the corporation under certain circumstances. It is appropriate that the language of "continuing service" conditioning "earned out" in section 6 should not appear in section 8, for the section clearly anticipates payments of accrued awards to individuals no longer in position to render continuing services as salaried employees. We agree that section 8 is the crucial provision in the present controversy. *See* O'Madigan v. General Motors Corp., 202 F.Supp. 190, 192 (E.D.Mo.1961), aff'd per curiam, 312 F.2d 250 (8th Cir. 1963). We also construe the term "earned out" as used in section 8 to mean "to receive" without reference to any requirement of "continued service," as that term is used in section 6.

The first paragraph of section 8 clearly provides for a right of ex-employees

to receive undistributed bonuses: "A beneficiary whose employment terminates by dismissal for cause or who voluntarily terminates his employment shall * * * lose any right to earn out his unearned bonus awards. *A beneficiary whose employment terminates for any reason other than death or as set forth in the preceding sentence shall * * * retain the right to earn out unearned bonus awards.*" (Emphasis added) To paraphrase, an employee who quits voluntarily loses his right to receive undistributed portions of previously awarded bonuses, while an employee terminating his employment other than voluntarily but who is not dismissed for cause retains the right to receive unpaid portions of the bonus awards.

Each of these provisions is qualified by the following language: "unless otherwise determined in connection with the termination of his employment." This language, we think, means that in either eventuality an opposite decision could be made with respect to unreceived portions of bonuses. Thus a beneficiary who was discharged for cause or who voluntarily resigned could nevertheless be permitted to receive his unpaid bonuses, and a beneficiary who quit other than voluntarily but was not dismissed for cause could be denied the right to such payments. In either case the second paragraph of section 8 conditions the right to receive such payments on the beneficiary's refraining from competition or other conduct inimical to the best interests of the corporations. The third paragraph of section 8 vests in the Committee "absolute discretion" to make such determinations as are provided for in section 8.[1]

Bonus and profit-sharing plans are a common device for rewarding incentive and industry, retaining competent executives, and paying additional compensation in a manner having favorable tax consequences. Under the General Motors Plan bonus awards are made for both past services and anticipated continued employment. Thus, as long as a bene-ficiary of a bonus remains employed, he has a vested right to receive bonuses awarded to him, subject to the payment schedule established in section 6. Section 8 provides, however, for the continued payment of undistributed bonus amounts even after termination of employment in certain cases. A voluntarily resigning employee, unless otherwise determined, loses the right to earn out; an involuntarily resigning employee, unless otherwise determined, retains this right. In such cases, the Plan does not contemplate future services as consideration for such payments, except insofar as a former employee may not enter into competition or engage in conduct inimical to the corporation. *See* O'Madigan v. General Motors Corp., 202 F. Supp. 190 (E.D.Mo.1961), aff'd per curiam, 312 F.2d 250 (8th Cir. 1963). Noncompetition may be said to be the consideration for payments of previously awarded bonuses in such cases. Thus, to the extent that an employee not discharged for cause has an accrued balance of undistributed bonuses, he has contractual rights therein, subject to the determination of the Committee as to the voluntariness or involuntariness of the employment termination or its determination based upon other factors not explicitly articulated. Our conclusion that section 8 vests in the beneficiary of bonus awards a contract right to receive undistributed portions thereof after leaving under certain conditions is strengthened by the reference in section 8(b) to the loss of the "right to earn out unearned bonus awards."

Appellee cites the case of O'Madigan v. General Motors Corporation, 202 F. Supp. 190 (E.D.Mo.1961), aff'd per curiam 312 F.2d 250 (8th Cir. 1963) as controlling. In that case, plaintiff, who had held an executive position in appellee's Pontiac Division, resigned from the corporation and became a Pontiac distributor. The head of Pontiac Division recommended that plaintiff be permitted to receive unpaid portions of his bonus awards. This course of action

1. Sections 4, 6 and 8 of the Bonus Plans are reproduced in the appendix to this opinion.

was approved by the Committee, which required plaintiff to notify it of any change in his employment status. Plaintiff subsequently joined Packard Corporation as a sales manager and so informed General Motors. The Committee thereafter determined that plaintiff should lose his right to earn out unearned bonus awards as of the date he joined Packard.

Plaintiff brought suit to recover the undistributed balance of his awards on the theory that the Plan vested title or right in the beneficiary of bonuses once the award had been made. The trial court disagreed and held for the defendant. The court found that the Plan was an incentive plan to reward past service and future efforts. The court felt strengthened in this conclusion by the requirement in the Plan that a beneficiary permitted to receive undistributed bonuses after leaving the corporation must refrain from engaging in competitive endeavor. The provision for discretion of the Committee with respect to the awards, it was held, "contractually and impliedly establishes discretion and provides for the granting or termination of the awards." 202 F.Supp. at 193. The court then found that within the terms of the Plan,

> * * * plaintiff, by voluntarily terminating his services with defendant and by engaging in a rival and competitive business, placed himself in a position inimical to the best interests of the defendant and outside of the benefits of the bonus awards; that when the Committee acted to terminate plaintiff's interests they did so within the provisions of the agreement and their action actually, contractually and finally terminated plaintiff's rights to further participation. Id.

The Court of Appeals affirmed upon the reasoning of the district court. 312 F.2d 250 (8th Cir. 1963). We find the *O'Madigan* case to be distinguishable.

We note initially that the governing language of section 8 in effect at that time is substantially different from the language in the present version of the Plan. As reproduced in the margin of the trial court's opinion section 8 then provided:

> 8. (a) A beneficiary whose employment terminates by dismissal for cause, of which the Bonus and Salary Committee shall be the sole judge, shall lose any right to earn out his unearned bonus award.

> (b) A beneficiary who voluntarily terminates his employment shall have no right to earn out his unearned bonus awards, unless and to the extent the Bonus and Salary Committee, in its sole discretion, decides otherwise. In the event of such decision, the beneficiary may earn out his unearned bonus awards, provided that and for so long as such beneficiary to the satisfaction of the Bonus and Salary Committee, refrains from engaging directly or indirectly in activities competitive with the activities of General Motors and from acting or conducting himself in a manner inimical or in any way contrary to the best interests of General Motors.

Whereas that version specified only that a beneficiary voluntarily terminating has no right to undistributed awards unless otherwise decided, the present Plan, as we have construed it, provides that a beneficiary whose termination is involuntary retains the right to receive his awards, unless otherwise determined. The issue in *O'Madigan* was whether the Plan vested a beneficiary with any right to receive future payments, and the court construed the Plan to vest no such right. In the instant case, however, the issue is whether the Committee may deny the express right to receive payments with complete immunity from judicial scrutiny.

Secondly, *O'Madigan* dealt with a factual situation clearly within the language of the former section 8(b), for the plaintiff had engaged "directly or indirectly in activities competitive with" the activities of defendant by joining Packard, justifying the trial court's holding that the termination of plaintiff's interests was within the provi-

sions of the agreement between the parties as embodied by the Plan. 202 F. Supp. at 193. In the instant case appellant challenges the Committee's denial of bonus awards with no finding or statement of reasons based upon voluntariness or otherwise.

Thirdly, the court in *O'Madigan* did not base its holding on the absolute discretion of the Committee, but rather first found as facts that plaintiff had quit voluntarily and had then engaged in competitive conduct inimical to the corporation. The grant of discretion was mentioned only as buttressing the conclusion that the Plan was an incentive plan vesting no rights in awards beyond the time of a beneficiary's employment with the corporation. The case is thus not authority for unbridled decision-making power in the Committee when a factual dispute arises from a Committee determination or when its action is challenged as arbitrary.

A second case cited by appellee is equally unpersuasive. In Parrish v. General Motors Corporation, 137 So.2d 255 (Fla.App.1962) plaintiff sought to collect a bonus allegedly due to him in 1956. He had received bonuses under the Plan in each of the years 1952–1956, but was severed from the corporation in 1956 without a bonus award being made. The court affirmed a summary judgment for the defendant, holding that there was no clear contractual right to a bonus award. This case is clearly not in point. It involved the right to receive a bonus award never made, not the right to receive undistributed portions of previously awarded bonuses. The court in *Parrish* cited section 4 of the Plan as vesting in the Committee discretion to make awards in the first instance. The case does not concern the facts presented in the present appeal and its holding is inapplicable to the issue here presented.

The problem of the Committee's exercise of discretion in this case is more clearly focused in a case involving a still earlier version of the appellee's bonus payment plan. In Coats v. General Motors Corp., 11 Cal.2d 601, 81 P.

2d 906 (1938), plaintiff had sued for the value of undelivered portions of a stock bonus award made prior to his discharge. The corporation argued that plaintiff was discharged for cause, of which the Committee was the sole judge, so that by the terms of the Plan, plaintiff had no right to receive these bonuses. The trial court directed a verdict for the defendant. The appellate court reversed, holding that since there was evidence that the discharge was other than for cause, the question was properly for the jury. 3 Cal.App.2d 340, 39 P. 2d 838 (1934). On remand for trial, the jury found for the plaintiff.

The Supreme Court of California later affirmed, stating that it could not accede to the corporation's contention that the Committee's finding was conclusive. While the evidence conflicted as to whether plaintiff was dismissed for cause, the Court found no evidence that the Committee ever passed on the question of whether the plaintiff had rendered satisfactory services. The Court noted that the Committee might have concluded that unsatisfactory service was the cause of the dismissal contrary to the actual facts. Thus there was a proper question for a jury: " * * * the circumstance that the bonus plan purported to constitute the committee the sole judge of the cause of the dismissal is unavailing where its finding is contrary to the fact." 81 P.2d at 909.

This reasoning is in accord with our view that no question of fact is presented only if the Committee is permitted to make decisions arbitrarily and without regard to the facts of a particular case or its own past decisions. In general, the power to exercise discretion is not the power to act arbitrarily; discretion may not be abused by those to whom it is entrusted, and this fact holds true no less in the private than in the public sector. While courts should be wary of interfering with the judgment of corporate executives, it has been held that such judgment cannot stand if fraud or bad faith was shown. Siegel v. First Pennsylvania Banking and Trust Co.,

201 F.Supp. 664, 669 (E.D.Pa.1961). In *Siegel,* plaintiff sued for amounts allegedly due under a pension plan. The court denied a motion to dismiss despite language in the governing agreement making decisions of the pension committee "final and conclusive." The court refused to afford such finality to a decision to terminate rights based on a finding that plaintiff had entered into competition with the company in contravention of the terms of the plan. After finding that the pension involved contractual rights, the court held that "one party may not arbitrarily deny the rights of the other and thereafter be subject to no judicial sanctions." *Id.* at 669. The court stated as the applicable standard of review the question whether the committee was guilty of " 'fraud or such gross mistakes as imply bad faith or failure to exercise an honest judgment.' " *Id.* It was thus noted that a committee might make a decision without any reference to the facts involved, a "failure to exercise an honest judgment."

The rationale for this position is thus stated in another case which we find apropos here:

> * * * While there are significant exceptions, courts generally do not look favorably upon provisions that give to one party to a contract the power to settle for itself any disputes arising under the agreement.
>
> The judicial mind is so strongly against the propriety of allowing one of the parties, or its especial representative, to be judge or arbitrator in its own case, that even a strained interpretation will be resorted to if necessary to avoid that result. Railway Passenger & Freight Conductors' Mutual Aid & Benefit Association v. Robinson, 1893, 147 Ill. 138, 159–160, 35 N.E. 168, 176.

Hurd v. Illinois Bell Telephone Co., 136 F.Supp. 125, 154–155, (N.D.Ill.1955), aff'd, 234 F.2d 942 (7th Cir.), cert. denied sub. nom. Seybold v. Western Electric Co., 352 U.S. 918, 77 S.Ct. 216, 1 L. Ed.2d 124 (1956).

Appellant argues that whether his resignation was voluntary or involuntary is a question of fact. While we have construed section 8 as giving a beneficiary the "right" to earn out unpaid bonus awards, we have also concluded that the Committee is entitled by the terms of the Plan to deny a beneficiary whose resignation is involuntary this same right. Section 8, then, according to its literal wording, would appear to make the characterization of the resignation as voluntary or involuntary truly immaterial since the Committee is empowered to withhold at will unpaid amounts even if it should conclude that a resignation was involuntary. The appellee argues that since the conclusions of the Committee are final, there is no genuine issue of material fact for a fact-finder. Although appellee attempts to show that appellant's resignation was "voluntary" as that word is used in several legal contexts, the argument in the final analysis is that the characterization of a resignation by a jury or anyone else is immaterial once the Committee has decided to withhold payments which the Plan says a resigning employee has the right to retain.

The power to characterize resignations and to grant or deny the right to "earn out" in the case of employment termination is vested in the Committee subject to no specifically defined limitations. Appellant argues that such unfettered discretion is not allowable because it would give to the Committee the arbitrary power to render a beneficiary's section 8 right nugatory—the right could be denied whenever the Committee decided to deny it, without assigning or adopting any reasons, and regardless of the reasons actually advanced, or the Committee's past decisions. Thus, it is argued, that the Committee should not be permitted to exercise what amounts to uncontrolled power; and that when a beneficiary thinks that his resignation should be treated as involuntary and the Committee disagrees and withholds bonuses, or agrees and still withholds bonuses, rights under the contract are

brought into apparent conflict and the parties may properly invoke judicial review. Whether the Committee has acted arbitrarily or with reasonable basis then becomes a material issue of fact.

Section 8 does not contain the sole mention of the Committee's discretion under the Plan. Section 4, which the district court noted in passing, provides in part:

> Full power and authority to construe, interpret and administer this plan shall be vested in the Bonus and Salary Committee as from time to time constituted pursuant to the By-Laws of the Corporation. Decisions of the Committee shall be final, conclusive and binding upon all parties, including the Corporation, the stockholders and the employees, provided * * *.

The concluding proviso binds the Committee in fixing awards to the set amounts which may be credited each year to the reserve established for funding the Plan. Although neither the district court nor the appellee relied completely on this section, we must decide whether this language and that of section 8 give the Committee a conclusive, non-reviewable right to withhold unpaid portions of previously awarded bonuses, without regard to the reasons for the Committee's action. We hold that the Committee may not so act.

We think that the proposition emerges from the cases we have reviewed, and others,[2] that when an executive committee is vested with the authority to terminate rights in a bonus, pension, or other similar plan, upon a factual determination such as voluntariness, it is bound to exercise its authority honestly and in good faith.[3] Totally arbitrary decisions may not be countenanced. Such a standard requires that decisions may not be put beyond judicial scrutiny when a party affected thereby raises a genuine factual dispute under the terms of the plan in question.

Since we conclude that factual issues are present and that the case is inappropriate for disposition by summary judgment, the nature of the factual dispute and some indication of the possible scope of the factual inquiry should be expressed.[4] The ultimate inquiry for the

---

2. See generally, Annotation, 81 A.L.R.2d 1066 (1962).

3. Our conclusion is strengthened with respect to the present case by a consideration of the General Motors Bonus Plan, in its totality, and the reports of several cases decided thereunder by the Committee, all of which indicate that the Plan was designed to require, and that both beneficiaries and management have come to expect, that the decision of the Committee in any case would be taken in good faith after a review of the pertinent facts.

4. The conclusion that a genuine issue of material fact as to the conduct of the Committee exists in this case is strengthened by the depositions and files of the Committee made a part of the record below. In his deposition, Mr. George W. McCagg, assistant treasurer of General Motors, testified to the general policy of the Committee as expressed in the Manual of General Policies and Procedure. With respect to a resignation, for reasons of health of the beneficiary, classified as a "quit," the indicated general policy is

to allow *retention of the right to receive unearned bonuses.* The record also includes files of the Committee, obtained by the appellant through discovery, which indicate a policy, in several closely analogous cases of terminations for reasons of health of the beneficiary or a member of his immediate family, of allowing the retention of the right to earn out. Appellant has alleged that there are twenty-two such cases. Seven files are reproduced in the record, each with a recommendation for payment of bonuses and a statement of reasons for the recommendation, generally noting a favorable employment record and the compelling reasons for the resignation. Six of these cases were denominated as "quits," as was that of the appellant, but the comparable file on appellant's resignation contains no explanation for the negative recommendation. Appellant's claim was denied despite the fact that the Committee's minutes concede that he had rendered valuable services to the corporation. Such files may be pertinent to the questions of whether the Committee made a good faith determination in appellant's

trial court is whether the Committee in denying the appellant the bonus awards under section 8 exercised a good faith judgment on reasonable grounds or indulged in an arbitrary use of its power. Obviously in resolving this issue the evidentiary inquiry should be of considerable scope, including without necessarily being limited to, analogous cases involving other employees, the nature and extent of the Committee's inquiry in the appellant's case, any facts on which the Committee acted, the facts as to appellant's past employment and the circumstances dictating his resignation, the recommendation of management to the Committee with respect to appellant's claim and the reasons therefor, whether the Committee inquired into management's recommendation or merely accepted it as of course, and any other facts which the trial judge may deem relevant on the issue of good faith or arbitrariness. As the record now stands before us, with no reason appearing to support the Committee's negative decision other than its possibly automatic acquiescence in management's recommendation, which itself was contrary to its position in numerous prior cases on similar facts, the possibility of arbitrariness is at least suggested—making summary disposition both inadvisable and inappropriate.[5]

Reversed and remanded, for further proceedings not inconsistent with this opinion.

case, had a reasonable basis for its decision, or did anything other than simply to acquiesce in the recommendations of management.

5. Under the view we have taken the trial judge will be required to submit the controlling factual issue to the jury. This opinion should not be read, however, as directing the trial judge to reject or receive any particular item of evidence, nor as indicating that after all the evidence is submitted the controversy may not resolve itself into a question of law for determination by the court. On the other hand, our opinion is not to be taken as affording the Bonus and Salary Committee any further opportunity to act upon appellant's case. Final determina-

APPENDIX

General Motors Bonus Plan, as amended through January 8, 1968, sections 4, 6, and 8 in their entirety are as follows:

4. Full power and authority to construe, interpret and administer this plan shall be vested in the Bonus and Salary Committee as from time to time constituted pursuant to the By-Laws of the Corporation. Decisions of the Committee shall be final, conclusive and binding upon all parties, including the Corporation, the stockholders and the employes, provided, however, that the Committee shall rely upon and be bound by the amount of net earnings, the amount of net capital, the maximum amount which may be credited to the reserve, the total amount available in the reserve, the total amount to be charged to the reserve pursuant to paragraph 11(b) and the value of stock for award purposes, all as reported by the independent public accountants.

6. The Bonus and Salary Committee shall have discretion with respect to the determination of each bonus award. Recommendations for bonus awards shall be made to the Committee by the Chairman of the Board of Directors under such procedure as may from time to time be prescribed by the Committee, except that no such recommendations shall be made with respect to employes of the Corporation or of any subsidiary

tion of appellant's claim will be made in the present action. Should the ultimate judicial finding be that the Committee, in denying appellant's claim, exercised a good faith judgment on reasonable grounds, the final judgment would be in favor of the appellee and the appellant's action would be dismissed. Contrariwise, if the ultimate judicial finding should be that the Committee in denying the claim indulged in an arbitrary use of its power, the final judgment would be in favor of the appellant and he would be entitled to the recovery he seeks. If indeed the Committee acted wrongfully in denying the appellant's claim, a remand to the Committee for further consideration would not in our view afford the appellant an efficacious remedy.

who were in the year for which a bonus is awarded members of the Board of Directors, but such bonus shall be dealt with exclusively by the Bonus and Salary Committee under such procedure as it may determine. The aggregate amount of bonus awarded in any year to executives who are also granted stock options in such year pursuant to the General Motors Stock Option Plan shall be 75% of the aggregate amount of bonus which would have been awarded to such executives under this plan, in the opinion of the Committee, if they were not being granted such stock options under the General Motors Stock Option Plan.

Upon final determination of bonus awards by the Committee, each award of $1,000 or less (cash or stock of equivalent award value) made prior to January 1, 1968 and each award of $2,000 or less made after December 31, 1967 shall be paid at the time of the award. Each award of more than $1,000 made prior to January 1, 1968 shall be paid in annual instalments of 20% or $1,000, whichever is greater, and each award of more than $2,000 made after December 31, 1967 shall be paid in annual instalments of 20% or $2,000, whichever is greater, the first such instalment at the time of award, and the remaining instalments in January of each succeeding year (until the full amount of the award is paid) if earned out by the beneficiary by continuing service to the Corporation, at the rate of $\frac{1}{12}$th of the amount of the first instalment for each complete month of service beginning with January of the year of the determination, except that if it shall be determined that a beneficiary has acted or conducted himself in a manner inimical or in any way contrary to the best interests of the Corporation, such beneficiary shall lose any right to receive any portion of any instalment or amount that would otherwise have been earned out subsequent to the first of the month in which such act or conduct first occurred, provided however, that in no case

shall the employe lose his right to earn out his unearned bonus awards as of a date prior to January 1 of the year in which the determination resulting in such loss of right is made; and provided that no instalment or amount delivered or paid prior to the date of such determination shall be required to be returned. The determination as to whether any act or conduct of a beneficiary is inimical or in any way contrary to the best interests of the Corporation shall be made by the Bonus and Salary Committee under such procedure as may from time to time be prescribed by the Committee and shall be made in the absolute discretion of the Committee. Any determination so made, including any determination of the time at which such act or conduct first occurred, shall be conclusive.

8(a). A beneficiary whose employment terminates by dismissal for cause or who voluntarily terminates his employment shall, unless otherwise determined in connection with the termination of his employment, lose any right to earn out his unearned bonus awards. A beneficiary whose employment terminates for any reason other than by death or as set forth in the preceding sentence shall, unless otherwise determined in connection with the termination of his employment, retain the right to earn out unearned bonus awards.

If it shall be determined that a beneficiary who was permitted to retain his right to earn out his unearned bonus awards upon termination of employment has, after such termination of employment, engaged, directly or indirectly, in any activity which is in competition with any activity of the Corporation or any subsidiary or has, either prior to or after such termination of employment, otherwise acted or conducted himself in a manner inimical or in any way contrary to the best interests of the Corporation, such beneficiary shall, unless otherwise determined, lose any right to earn out his unearned bonus awards as of the

first of the month in which such competitive activity or such act or conduct first occurred; provided however, that in no case shall the employe lose his right to earn out his unearned bonus awards as of a date prior to January 1 of the year in which the determination resulting in such loss of right is made; and provided that no instalment or amount delivered or paid prior to the date of any such determination shall be required to be returned.

Each determination provided for in this paragraph 8(a) shall be made by the Bonus and Salary Committee under such procedure as may from time to time be prescribed by the Committee and shall be made in the absolute discretion of the Committee. Any determination so made, including any determination of the time at which such competitive activity or such act or conduct first occurred, shall be conclusive.

8(b). A beneficiary who loses his right to earn out unearned bonus awards shall receive forthwith all earned-out portions of bonus awards and all amounts, if any, payable in accordance with the provisions of paragraph 7(c) with respect to such earned-out stock, but not with respect to unearned stock. As to any instalment payable in stock, a fractional share shall not be delivered but shall instead be purchased by the Corporation at the closing market price of the stock on the New York Stock Exchange on the date of termination of the earning-out right. The unearned portions of bonus awards, including unearned stock at its award value, shall be credited to income of the Corporation and any such unearned stock shall be transferred at such award value from the special treasury stock account designated for purposes of this plan and the General Motors Stock Option Plan to the account for treasury stock which is held for other corporate purposes.