DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Keith Kleve, has appealed from the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of Appellee, Thermo-Rite Manufacturing Company. This Court reverses.
 I {¶ 2} Appellant became the president of Thermo-Rite on February 5, 1996. He held that position until his resignation, which became effective February 21, 2003. During the course of Appellant's employment, Appellee instituted a Phantom Stock Plan ("Plan") and drafted a Phantom Stock Agreement ("Agreement"). Roy Allen, Appellee's CEO, was named as the administrator of the plan. The Plan, by its stated purpose, was devised to attract and retain outstanding personnel. In order to be entitled to payments from the Plan, certain triggering events had to occur. Included among those triggering events were situations in which an employee was fired without cause or voluntarily terminated his employment with good reason. However, the Agreement also provided that the right to payments would be vested in an employee once that employee had worked for Appellee for seven years. At that time, the right would become vested and could not be stripped away even if the employee was fired for cause or left his employment without good reason.
 {¶ 3} Upon resigning, Appellant sought payments from the Plan, which Appellee denied him. Appellee contended that Appellant had been placed on probation in November of 2002 and informed that such probation tolled the seven-year period under the Agreement. Appellee further asserted that Appellant received the letter notifying Appellant of these facts and signed and accepted the provisions of the letter. When Appellee continued to refuse Appellant payments from the Plan, Appellant brought the instant suit in the trial court.
 {¶ 4} On February 4, 2004, Appellee moved for summary judgment, arguing that by the definitions in the Plan, Appellant had not been employed for seven years. Additionally, Appellee argued that, in the alternative, the parties had properly amended the Plan such that Appellant's probation period tolled the clock on the seven-year provision contained in the Agreement. The trial court agreed with Appellee's contentions and awarded judgment in its favor. Appellant has timely appealed, raising one assignment of error.
 II Assignment of Error Number One
"The trial court erred in entering judgment in favor of [appellee]."
 {¶ 5} In his sole assignment of error, Appellant has contended that the trial court erred in granting summary judgment. Specifically, Appellant has argued that the alleged amendment to the Agreement was not supported by adequate consideration and that he in fact fulfilled the requirements of working for Appellee for seven years. This Court agrees.
 {¶ 6} We review an award of summary judgment de novo. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12, certiorari denied (1986), 479 U.S. 948, 107 S.Ct. 433, 93 L.Ed.2d 383.
 {¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991),75 Ohio App.3d 732, 735.
 {¶ 9} In support of its motion, Appellee utilized the Plan and Agreement, several letters written to Appellant, Appellant's resignation letter, and Appellant's deposition. With these items, Appellee asserted that no genuine issue of material fact remained. Appellant responded to this motion utilizing the language of the Plan and Agreement and Roy Allen's deposition. Ultimately, the trial court agreed with Appellee's contention, awarding Appellee judgment and denying Appellant payments from the Plan.
Consideration for the Amendment
 {¶ 10} Appellant received a letter dated November 12, 2002, signed by Roy Allen. The letter stated and explained Appellant's shortcomings as president of Appellee. It went on to note that Appellant was being placed on probation. The following provisions are pertinent to the issue at hand.
"Because of your performance as outlined above, I am putting you on probation until such time as your performance in these areas improves and stabilizes. Being put on probation shall mean that you will not be eligible for any wage increase or bonus consideration while you are on probation. This will also mean that the time clock on your vesting schedule on the phantom stock plan will be halted until such time as you perform properly and come off of probation."
The letter was signed by Allen and concluded, "I will expect you to sign this letter, along with myself, acknowledging and accepting the contents of this letter." Upon receipt, Appellant did sign and return the letter.
 {¶ 11} Based upon the above language and Appellant's signature, Appellee has asserted that the parties properly amended the Agreement. The Agreement itself provided as follows:
 "No alteration, amendment, change, modification, addition, deletion, or recission of or to this Agreement shall be effective unless it is in writing and properly and duly executed by the parties hereto."
Appellee has argued that this provision was strictly followed, and as such a valid amendment of the Agreement occurred. We disagree.
 {¶ 12} It is a well established rule that a contract is not binding unless supported by consideration. Lake Land Emp. Group of Akron, LLC v.Columber, 101 Ohio St.3d 242, 2004-Ohio-786, at ¶ 16, citing Judy v.Louderman (1891), 48 Ohio St. 562, paragraph two of the syllabus. In the context of at-will employment, the Ohio Supreme Court has held that forbearance by employer from terminating the employee constitutes consideration for a change in the employee's at-will employment. LakeLand, at ¶ 19. This holding is supported by the fact that "[i]n the event that an at-will employee quits or is fired, he or she provides no further services for the employer and is generally entitled only to wages and benefits already earned." Id. at ¶ 17.
 {¶ 13} The instant matter is distinguishable from Lake Land. Here, Appellant, while admittedly an at-will employee, had actual contractual rights under the Plan and Agreement. Those rights could not be terminated in the same manner as his at-will employment. Specifically, if Appellee had terminated Appellant's employment without cause, Appellant would have had a contractual right to payments from the Plan. Further, the Plan limited "cause" as follows:
 "`Cause' means (i) fraud, misappropriation or embezzlement involving Company property by an employee or other intentional wrongful act(s) which materially impairs the goodwill or business of the Company or causes material damage to its property, goodwill, or business; (ii) commission by an Employee of a felony; (iii) gross negligence of an Employee, or (iv) material breach by an Employee of any provision of the Phantom Stock Units Agreement to be entered into by the Company and each Participant in accordance with the terms hereof (a `Phantom Stock Units Agreement')."
As such, under the circumstances presented here, upon termination without cause, Appellant would have been entitled to more than just wages and benefits already earned. Accordingly, this Court finds that the rationale supporting the decision in Lake Land is not present here. See Id.
 {¶ 14} We note that the parties dispute whether Appellant could have been terminated for cause under the Agreement. The trial court made no determination as to whether Appellant could have been terminated for cause. However, as the record reflects that a factual dispute exists, this Court cannot find that summary judgment would be proper on the alternate ground that Appellant could have been fired for cause and would have thereby lost his rights under the Plan.
 {¶ 15} Other than the promise not to fire Appellant, no further consideration was provided sufficient to amend the Agreement. We find that the forbearance by the employer of such a right cannot act as consideration to amend rights which are created by a written contract. Therefore, no valid amendment to the Plan was executed by the parties.
"Year"
 {¶ 16} To be entitled to benefits under the Plan which could not be divested, the Agreement provided:
 "(c) Notwithstanding any provision of this Agreement to the contrary, Employee shall become fully vested in the Phantom Share Units awarded to him hereunder and shall no longer bear any risk of forfeiture of said Phantom Share Units as a result of the occurrence of any events described in subsection (b) hereinabove upon the first to occur of the following events:
 "(i) The Company having employed Employee for a period of seven (7) years [.]"
The Agreement continues on to provide as follows:
 "Any dispute or disagreement which arises under, or in any way relates to, the interpretation or construction of this Agreement shall be determined by the Chairman. Any such determination made hereunder shall be final, binding and conclusive for all purposes."
 {¶ 17} Appellee has argued that the Plan defines "Plan Year" when its states: "Unless the Chairman determines otherwise, the Plan shall have a plan year that shall be the calendar year." Further, the Agreement contains a provision that provides that the Plan shall control if there is a conflict between the Plan and the Agreement. As such, Appellee interpreted the Plan and Agreement to both utilize a calendar year.
 {¶ 18} In Hainline v. General Motors Corp. (C.A.6, 1971), 444 F.2d 1250, the Sixth Circuit Court of Appeals was presented with a substantially similar situation. In that case, the General Motors bonus plan provided that interpretations by the committee in charge of administering the plan were final and conclusive. Id. at 1258. However, the court held that such language does not preclude judicial review. Id. at 1255. The court went on to hold that the applicable standard of review of the committee's interpretation was whether or not the committee was guilty of "fraud or such gross mistakes as imply bad faith or failure to exercise honest judgment." Id. at 1256, quoting Siegel v. First Penn. Banking and TrustCo. (E.D.Pa. 1961), 201 F.Supp. 664, 669. However, this broad discretion "`does not apply where the interpretation is contrary to that which would be applied by an objective and impartial body applying applicable contract construction principles. Such decision goes beyond the interpretation of the policies under the plan [.]"' Holderman v.Huntington Leasing Co. (1984), 19 Ohio App.3d 132, 135.
 {¶ 19} Appellee has argued that the Plan defines "Plan Year" when its states: "Unless the Chairman determines otherwise, the Plan shall have a plan year that shall be the calendar year." Further, the Agreement contains a provision that provides that the Plan shall control if there is a conflict between the Plan and the Agreement. As such, Appellant has contended that since the Plan discusses a calendar year, that the Agreement's use of the word year must also be construed to mean calendar year. This Court disagrees.
`"[T]he first general maxim of interpretation * * * is, that it is not allowable to interpret what has no need of interpretation. When a * * * [writing] is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which * * * [it] naturally presents.'" Allen v. Standard Oil Co. (1982), 2 Ohio St.3d 122, 124, quoting Lawler v. Burt (1857), 7 Ohio St. 340, 350.
 {¶ 20} In the instant case, the Agreement does not refer to a "plan year" at any point. Further, the Plan itself has a definitions section which at no point defines year, plan year, or even calendar year. The Agreement on the other hand discusses years of employment. At a bare minimum, these differing terms cause the Agreement and Plan to be ambiguous. While "year" can mean calendar year, it is also defined as "a period of time equal to one year of the Gregorian calendar but beginning at a different time[.]" Webster's New Collegiate Dictionary (1980), 1348. Given these opposing meanings, we follow longstanding precedent and construe ambiguities against the drafter of the contract. Fletcher v.Fletcher (1994), 68 Ohio St.3d 464, 471. As such, `year' must be construed to simply mean 365 days, without regard to a calendar year. As Appellee's interpretation does not coincide with the interpretation reached through common contract construction principles, it is not entitled to the deference provided by Hainline. Holderman,19 Ohio App.3d at 135. To accept Appellee's position would lead to the inequitable result that Appellant's first eleven months of employment are entirely uncounted toward the seven-years of employment vesting provision.[1] Thus, under the interpretation offered by Appellee, over 21 months of Appellant's employment period would not count toward the vesting period as the 10 months he worked when not in probation in 2002 would also not be counted. We decline to adopt such a position.
 {¶ 21} The record reflects that Appellant began working for Appellee on February 5, 1996. His resignation became effective on February 21, 2003. Appellee has argued that Appellant submitted his resignation letter on January 24, 2003, and that this is the date that should be used to calculate his term of employment. However, by Appellee's own records, Appellant's final day of work was February 21, 2003. Accordingly, Appellant had satisfied the seven-year vesting provision contained in the Agreement.
 {¶ 22} Based upon our conclusions, the trial court erred in entering summary judgment in Appellee's favor. Accordingly, Appellant's sole assignment of error has merit.
 III {¶ 23} Appellant's sole assignment of error is sustained and the judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Slaby, P.J. Carr, J. Concur.
[1] Further, when discussing the issue at oral argument, Appellee also stated that Appellant's period of probation beginning in November would also eliminate that calendar year from the seven-year vesting provision.