TOBIN *v.* GENERAL MOTORS CORPORATION

1. CONTRACTS—EMPLOYMENT CONTRACT—BONUS—STOCK OPTION—
   TERMINATION—SUMMARY JUDGMENT.

   Summary judgment against executive who sued former em-
   ployer for recovery of unpaid bonus awards and un-
   delivered stock credits *held*, proper, where employer-corpora-
   tion determined that plaintiff had lost his right to earn out
   the remaining bonus award and would not be receiving any
   more of the credits under a stock option plan, because he
   accepted employment with a competitor and the employment
   agreement between plaintiff and defendant terminated bonuses
   and stock credits if the employee engaged in activity in
   competition with the employer (GCR 1963, 117).

2. CONTRACTS—EMPLOYMENT CONTRACT—BONUS PLAN—STOCK OP-
   TION—TERMINATION—EMPLOYMENT OF PLAINTIFF BY COMPETITOR—
   RESTRAINT ON COMPETITION.

   Bonus plan in a corporation's employment contracts containing
   provision that an employee who engaged, directly or in-
   directly, in any activity which is in competition with any
   activity of the corporation or any subsidiary, shall lose any
   right to earn out his unearned bonus award and stock option
   plan containing similar provision *held*, not an unreasonable
   restraint on competition

3. JUDGMENT—SUMMARY JUDGMENT—ALLEGATIONS OF FACT.

   All of a plaintiff's well-pleaded allegations of fact are taken
   as true, and relevant contractual documents are construed

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 8]  35 Am Jur, Master and Servant § 99.
[3, 4, 6]  41 Am Jur, Pleading § 342.
[5]  53 Am Jur, Trial § 2 *et seq.*
[7]  29 Am Jur 2d, Evidence § 23.

strictly and against the drafter for summary judgment purposes (GCR 1963, 117).

4. Judgment—Summary Judgment—Trial.
    Summary judgment is not a substitute for fact-finding and the proceedings in connection therewith are not a substitute for a trial (GCR 1963, 117).

5. Trial.
    Trials are intended to operate as orderly hearings for the purpose of developing the truth concerning disputed allegations of material facts which prove or tend to prove an ultimate issue in the case.

6. Judgment—Summary Judgment—Controverted Material Fact.
    Neither party is entitled to summary judgment if there exists so much as a single controverted, material fact which establishes or tends to establish a proposition bearing on a genuine issue in the law suit (GCR 1963, 117).

7. Evidence—Judicial Notice.
    The Court of Appeals can take judicial notice that Ford Motor Company is a competitor of General Motors Corporation.

8. Contracts—Employment Contract—Bonus Clause—Interpretation.
    Plaintiff's contention that the action of a bonus and salary committee in determining that he had lost his right to earn out remaining bonus awards after he accepted employment with a competing corporation was unreasonable *held*, without merit, since the provisions of a voluntary plan such as a pension plan as interpreted by a pension board are conclusive on both question of law and fact.

Appeal from Wayne, James L. Ryan, J. Submitted Division 1 April 9, 1969, at Detroit. (Docket No. 5,468.) Decided May 28, 1969.

Complaint by Leo W. Tobin, Jr., against General Motors Corporation for recovery of unpaid bonus awards and undelivered stock credits. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*George B. Wells* and *Morton Fisher,* for plaintiff.

*Donald K. Barnes* and *George W. Coombe, Jr.,*
(*Ross L. Malone,* of counsel), for defendant.

BEFORE: Lesinski, C. J., and Fitzgerald and
V. J. Brennan, JJ.

Fitzgerald, J.   Leo W. Tobin, Jr., joined the AC
Spark Plug Division of General Motors Corpora-
tion as an engineer in 1949.  He rose rapidly in the
organization and by his severance in 1960 he was
earning in excess of $50,000 a year.

A prerequisite of his employment was participa-
tion in the General Motors bonus plan and the
General Motors stock option plan.   Under the bonus
plan, he was awarded benefits for 1957, 1958 and
1959, each subject to being "earned out".   For the
years 1958, 1959 and 1960, he was granted stock
options and other credits, also subject to being
"earned out" under the terms of the plan.   The com-
bined value of these benefits was alleged to be in
excess of $50,000.

In 1960, due to a reassessment of the situation,
plaintiff no longer continued with the company
(plaintiff uses the phrase, "employment was termi-
nated"; defendant, the term "he resigned to seek
greener pastures elsewhere").

To say that the phraseology of the plans is com-
plicated is an understatement.   This sample, also
cited by the trial court, details the important pro-
visions of the bonus plan and a like provision in the
stock option plan.

Section 6 of the bonus plan provides:

"The bonus and salary committee shall have dis-
cretion with respect to the determination of each
bonus award."

The section also provides:

"Upon final determination of bonus awards by the committee, each award of $1,000 or less (cash or stock of equivalent award value) shall be paid at the time of award. Each award of more than $1,000 shall be paid in annual instalments of 20% or $1,000, whichever is greater, the first such instalment at the time of award, and the remaining instalments in January of each succeeding year (until the full amount of the award is paid) if earned out by the beneficiary by continuing service to the corporation, at the rate of 1/12th of the amount of the first instalment for each complete month of service beginning with January of the year of the determination, except that if it shall be determined that a beneficiary has acted or conducted himself in a manner inimical or in any way contrary to the best interests of the corporation, such beneficiary shall lose any right to receive any portion of any instalment or amount that would otherwise have been earned out subsequent to the first of the month in which such act or conduct first occurred, provided that no instalment or amount delivered or paid prior to the date of such determination shall be required to be returned. The determination as to whether any act or conduct of a beneficiary is inimical or in any way contrary to the best interests of the corporation shall be made by the bonus and salary committee under such procedure as may from time to time be prescribed by the committee and shall be made in the absolute discretion of the committee. Any determination so made, including any determination of the time at which such act or conduct first occurred, shall be conclusive."

Section 8(a) states:

"If it shall be determined that a beneficiary who was permitted to retain his rights to earn out his unearned bonus awards upon termination of employment has, after such termination of employment,

engaged, directly or indirectly, in any activity which is in competition with any activity of the corporation or any subsidiary or has, either prior to or after such termination of employment, otherwise acted or conducted himself in a manner inimical or in any way contrary to the best interests of the corporation, such beneficiary shall, unless otherwise determined, lose any right to earn out his unearned bonus awards as of the first of the month in which such competitive activity or such act or conduct first occurred."

Plaintiff had no connection with defendant after 1960 and, in February of 1961, accepted employment with the Ford Motor Company as an executive assistant to the vice-president of manufacturing. Thereupon, General Motors determined that he had lost his right to earn out the remaining bonus awards and would not be receiving any more of the credits under the stock option plan.

Plaintiff sued for recovery of the unpaid bonus awards and undelivered stock credits. Defendant moved for summary judgment[1] which was granted. The lower court found no genuine issue of material fact and found it unnecessary to consider whether plaintiff was barred by the 3-year limitation in the plans or whether plaintiff had released defendant due to acceptance of a settlement in January, 1961, wherein plaintiff accepted a check for $1,237.50 "in full settlement of bonus awards in accordance with and subject to the terms and conditions of the General Motors bonus plan".

The controlling question here, as below, was whether sections 6 and 8(a) of the bonus plan and section 5(c) of the stock option plan are void as being violative of public policy as constituting an unreasonable restraint on competition.

---

[1] GCR 1963, 117.

On the general subject of summary judgments, and leading up to its decision, the trial court stated as follows:

"On oral argument, defendant claimed entitlement to accelerated judgment on the grounds of expiration of the applicable period of limitation of right of recovery and release. Those theories aside for the moment, defendant further claims entitlement to a judgment for the reason that '*    *    *    there is no genuine issue as to any material fact in this action and that defendant is entitled to a judgment as a matter of law    *    *    *,'    *    *    *

"That latter claim must be tested by reference to all of the documents which have been filed in this case; particularly, the pleadings, admissions, stipulations, and affidavits. For motion-decision purposes all of the plaintiff's well-pleaded allegations of fact are taken as true and relevant contractual documents are construed strictly and against the draftor.

"At the risk of over-simplification, it can be said that it is defendant's theory that, assuming the truth of all of the plaintiff's well-pleaded factual allegations, still: (a) there is no *genuine* issue of *material* fact; and, (b) defendant is entitled to a judgment on the law.

"On the other hand, plaintiff asserts: (a) there are genuine factual issues on material matters which require fact-finding and; (b) at any rate, defendant's bonus plan and stock option plan are either (1) illegal and therefore void as a matter of law or (2) if legal, were applied illegally to the plaintiff, to wit: arbitrarily and unreasonably.

"Indeed, plaintiff has alleged innumerable facts in his complaint. The fact allegations range the whole historical spectrum of his employment at General Motors. The allegations deal with his initial hiring, transfer within the corporate structure, geographical assignment and reassignment, conversations with other executives, receipt of letters and

correspondence, acceptance of monies and things of value, summary of the General Motors and Ford Motor Company manufacturing interests and many other matters. Further, there are negative allegations: that is, that certain events did not take place, *viz;* plaintiff's failure to read and understand documents signed by him, his lack of knowledge of the contents of instruments, and the like.

"Some of the plaintiff's allegations, conclusions and opinions are admitted. Some are denied, and others are neither admitted nor denied.

"It is axiomatic that summary judgment is not a substitute for fact-finding. Further, summary judgment and the proceedings in connection therewith are not a substitute for a trial. Trials are intended to operate as orderly hearings for the purpose of developing the truth concerning disputed allegations of material facts which prove or tend to prove an ultimate issue in the case. If there exists so much as a single controverted, material fact which establishes or tends to establish a proposition bearing on a genuine issue in the law suit, then, neither party is entitled to summary judgment.

"Comparing the plaintiff's complaint with the defendant's answer, paragraph for paragraph, it is apparent that there exist allegations of fact with outright denials, thereby raising issues of fact.

"However, GCR 1963, 117, is not intended to be applied to the pleadings alone. The rule-required affidavits, depositions, if any, and exhibits, are read together with the pleadings to test the 'genuineness' of the issues and the 'materiality' of the facts.

"A most careful reading and re-reading of the pleadings, affidavits and exhibits in this case fails to disclose the existence of a single allegation of material fact which is denied by the opposite party which would establish a genuine issue in the law suit."

As further pointed out by the trial court, "resolution of this lawsuit does not turn upon a decision

as to whether an act or event did or did not occur. It turns, rather, upon a construction of the General Motors bonus award plan, the General Motors stock option plan, and the decision whether either or both of them are illegal and/or void."

The General Motors plans in question were upheld in *O'Madigan* v. *General Motors Corporation* (CA 8, 1963), 312 F2d 250, which affirmed a granting of defendant's motion for summary judgment in *O'Madigan* v. *General Motors Corporation* (ED Mo, 1961), 202 F Supp 190. In the district court, plaintiff brought suit seeking recovery from defendant of certain money and stocks alleged to be due and owing by defendant to plaintiff pursuant to a bonus award contract.

Plaintiff was employed by defendant for 23 years and, upon leaving defendant's employ, went to work for Packard Corporation. The bonus plan involved in *O'Madigan* was the same plan as in the case at bar.

The district court concluded that the plan was valid, stating:

"It is the Court's conclusion that the bonus award plan is an incentive plan to reward for past services performed and for future services anticipated. The requirement that the awardee refrain from engaging directly or indirectly in competitive activities or conducting himself in a manner inimical or contrary to the interests of defendant gives strength to this conclusion. The fact that the plan recognizes termination of employment by death or otherwise likewise indicates the correctness of this conclusion. Further, the provision that the bonus and salary committee shall have discretion with respect to the award, not only supports this conclusion but, contractually and impliedly establishes discretion and provides for the granting or termination of the awards.

"It is the composite conclusion of the Court that under the terms of the bonus plan and plaintiff's position therein and thereunder that plaintiff, by voluntarily terminating his services with defendant and by engaging in a rival and competitive business, placed himself in a position inimical to the best interests of the defendant and outside of the benefits of the bonus awards; that when the committee acted to terminate plaintiff's interests they did so within the provisions of the agreement and their action actually, contractually and finally terminated plaintiff's rights to further participation."

The bonus plan was litigated in Florida in 1962, and the Florida District Court of Appeals upheld the validity of the plan in *Parrish* v. *General Motors Corporation* (Fla, 1962), 137 So 2d 255. The stock plan's validity is analogous.

Other points are raised by plaintiff, but successfully answered by defendant: First, the plans were not so arbitrary as to constitute overreaching by defendant. There was no attempt to prevent plaintiff from seeking employment with a non-competitive firm. The Court can take judicial notice that Ford Motor Company is a competitor of General Motors. Second, plaintiff's argument that General Motors' plans are void because they tend to create a monopoly in supervisory personnel is not substantiated by authority. The cases cited by plaintiff deal with unreasonable territorial restraints and have scant application. Third, plaintiff's contention that the action of the bonus and salary committee was unreasonable overlooks the fact that provisions of a voluntary plan such as a pension plan as interpreted by a pension board are conclusive on both questions of law and fact. See *Menke* v. *Thompson* (CA 8, 1944), 140 F2d 786. Furthermore, as General Motors points out, the plan itself makes no unqualified assurance of promise to pay bonuses.

The proper disposition of the case by the trial court, not dealing with the questions of release and expiration of the period of limitations, likewise obviates discussion of those issues here.

Affirmed. Costs to defendant.

All concurred.