WOODWARD v CADILLAC OVERALL SUPPLY COMPANY

Docket No. 56015. Argued June 3, 1975 (Calendar No. 4).—Decided April 21, 1976.

Arthur Woodward and others brought a class action to recover pension benefits pursuant to a plan adopted by Clean-Wear Service Company or Cadillac Overall Supply Co., its parent. The trustee, National Bank of Detroit, terminated pension rights at the direction of the Pension Trust Advisory Committee, under the provision of the retirement plan that any participant in the trust would lose his share if he entered the employment of a competitor without the written approval of the company. The Wayne Circuit Court, John D. O'Hair, J., denied plaintiffs' motion for summary judgment as to liability but certified the question for interlocutory appeal. The Court of Appeals, Quinn, P. J., and McGregor and Carland, JJ., denied leave to appeal (Docket No. 19,923). Plaintiffs appeal. *Held:*

The forfeiture-of-benefits clause does not violate the statute prohibiting agreements not to engage in any business because it neither extracts nor embodies such a promise; instead, it denies the right to further participation in the retirement plan if a person does engage in such employment, an acknowledgment of his right to do so. The statute, MCLA 445.761; MSA 28.61, bars only agreements which prevent engaging in other employment, not any restraint upon seeking other employment. The Legislature has not declared a public policy against enforcement of such clauses.

Justice Williams, with whom Chief Justice Kavanagh joined,

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 7] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 542–544, 571.

60 Am Jur 2d, Pensions and Retirement Funds §§ 50, 79.

Validity, construction, and effect of provision forfeiting or suspending benefits in event of competitive employment as part of retirement or pension plan. 18 ALR3d 1246.

[4, 5] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 446, 447, 457.

[6] 54 Am Jur 2d, Monopolies, Restraints of Trade Practices, and Unfair Trade Practices § 542 *et seq.*

dissented: This case may be resolved by the use of common-law principles, and it is not necessary to reach the question whether the statute restricting agreements not to compete applies. A clause in an employee retirement profit-sharing plan unilaterally established by the employer, or negotiated where the employee was substantially disadvantaged in bargaining power, which provides that a participant in the plan forfeits all rights to benefits if the employee enters into the employment of a competitor is void and unenforceable as a matter of law, where there are no limitations whatever in time and area. Since there are none here, the plaintiffs should be granted summary judgment.

Affirmed and remanded for further proceedings.

### OPINION OF THE COURT

1. CONTRACTS—RETIREMENT PLAN—EMPLOYMENT BY COMPETITOR— FORFEITURE OF BENEFITS.

A forfeiture-of-benefits clause of a company's retirement plan which denies the right to further participation in the retirement plan if a person enters the employment of a competitor without the company's written permission but which neither extracts nor embodies a promise not to engage in any employment does not violate the statute prohibiting agreements not to engage in employment (MCLA 445.761).

2. CONTRACTS—RETIREMENT PLANS—EMPLOYMENT BY COMPETITOR— FORFEITURE—PUBLIC POLICY.

The Legislature has chosen to bar only agreements which prevent an employee from engaging in other employment and it has not barred any restraint upon seeking other employment, nor has it, despite public discussion of forfeitures under retirement plans, declared a public policy against enforcement of such clauses (MCLA 445.761).

### DISSENTING OPINION

KAVANAGH, C. J., and WILLIAMS, J.

3. CONTRACTS—RETIREMENT PLANS—EMPLOYMENT BY COMPETITOR— FORFEITURE—RESTRAINT OF TRADE.

*An unnegotiated forfeiture clause in an employee pension plan which restrains all forms of competitive activity by the employee for an unlimited time and in an unlimited area is unreasonable per se and unenforceable; the clause is necessarily broader than required to protect the legitimate interests of the employee and contrary to the public interest.*

4. CONTRACTS—RESTRAINT OF TRADE.

> *Any bargain or contract which purports to limit in any way the right of either party to work or to do business, whether as to the character of the work or business, its place, the manner in which it shall be done, or the price which shall be demanded for it, may be called a bargain or contract in restraint of trade.*

5. CONTRACTS—RESTRAINT OF TRADE—REASONABLENESS—BALANCING TEST.

> *A balancing test is used to determine the reasonableness of a contractual restraint of trade; the court weighs the interests of the party in favor of whom the restraint runs, the interests of the party being restrained and the interests of the public in the context of the type of restraint being examined.*

6. CONTRACTS—RESTRAINT OF TRADE—REASONABLENESS.

> *The reasonableness of a covenant not to compete incident to the sale of a business has been generally scrutinized less rigorously by the courts than the reasonableness of such a convenant when incident to an employment contract.*

7. CONTRACTS—RETIREMENT PLANS—EMPLOYMENT BY COMPETITOR— FORFEITURE—RESTRAINT OF TRADE.

> *A forfeiture-of-benefits clause for becoming associated in any manner with a competitor in an employee retirement plan is reasonable only if the restraint (1) is no greater than is necessary for the protection of the employer in some legitimate interest, (2) does not impose undue hardship on the employee, and (3) is not injurious to the interests of the public; the burden is upon the employer to show the validity of the restraint.*

*Leitson, Dean, Dean, Segar & Hart, P. C.* (by *Robert L. Segar),* for plaintiffs.

*Fenton, Nederlander, Dodge, Ritchie & Witte, P. C.* (by *Alexander B. Ritchie* and *Patrick B. McCauley),* for defendants.

Amici Curiae:

*Butzel, Long, Gust, Klein & VanZile* (by *Leslie W. Fleming [Edward N. Sherry, Griffith B. Price,*

*Jr.,* and *Dewey, Ballantine, Bushby, Palmer & Wood,* of counsel]), for American Can Company.

*Dice, Sweeney & Sullivan, P. C.* (by *Joseph Levin),* for Robert C. Bannert.

LINDEMER, J. This is a class action by employees and the widow of a deceased employee to recover pension benefits allegedly due pursuant to a plan adopted by Clean-Wear Service Company or Cadillac Overall Supply Co., its parent. All parties' benefits were 100% vested but trustee National Bank of Detroit terminated pension rights at the direction of the Pension Trust Advisory Committee. The committee acted under the following provision of the retirement plan, entitled "Forfeiture of Benefits":

"In the event that any participant shall enter the employment of any competitor of any Company without the written approval of such Company, or become associated in any manner with such a competitor in the opinion of the Advisory Committee, whose decision shall be final, before such participant has received the full amount in his segregated account or accounts to which he otherwise would be entitled, such participant shall lose all right to any balance in such account and the interest of such participant in any Trust shall at once cease and terminate and be allocated to other eligible employees covered by such Trust in accordance with the provisions of Section 3 below."

When this clause was raised as a defense, plaintiffs moved for summary judgment as to liability pursuant to GCR 1963, 117.2(2). The trial court denied the motion but certified the question for interlocutory appeal. The Court of Appeals denied leave but this Court granted leave.

Appellants claim that the clause in question violates MCLA 445.761; MSA 28.61:

"All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

Appellees rely on *Couch v Difco Lab, Inc,* 44 Mich App 44; 205 NW2d 24 (1972). We agree that *Couch* controls.

The Legislature declared that promises or agreements not to engage in any employment were against public policy, illegal and void. This clause neither extracts nor embodies such a promise. Instead, it denies the right to further participation in the retirement plan if he does engage in such employment, an acknowledgment of his right to do so. While we recognize that employees may be deterred from engaging in competition by such an arrangement, we agree with Judge (now Justice) LEVIN's interpretation of the Michigan statute in *Couch:*

"The Legislature has chosen to bar only agreements which prevent an employee from engaging in other employment. It has not barred any restraint upon seeking other employment. Nor has it, despite public discussion of forfeitures under private sector retirement plans, declared a public policy against enforcement of such clauses."[1]

See also Judge (now Justice) FITZGERALD's opinion in *Tobin v General Motors Corp,* 17 Mich App 475; 169 NW2d 644 (1969). If a broader prohibition is to

---

[1] *Couch, supra,* at 48; 205 NW2d 26 *(footnote omitted).*

be imposed, it is up to the Legislature, not this Court.

Appellants' other arguments are not properly presented for our consideration by this motion for summary judgment but depend upon facts which must be developed at trial. See *Hubbard v Miller,* 27 Mich 15; 15 Am Rep 153 (1873), and *Reed v Kaydon Engineering Corp,* 38 Mich App 353; 196 NW2d 487 (1972).

The trial court's denial of summary judgment is affirmed. Remanded for further proceedings.

COLEMAN and FITZGERALD, JJ., concurred with LINDEMER, J.

LEVIN and RYAN, JJ., took no part in the decision of this case.

WILLIAMS, J. *(dissenting).* In this action for a summary judgment, we are asked to determine whether a clause in an employee retirement profit-sharing plan unilaterally established by the employer, which provides for the forfeiture of all benefits if an employee becomes associated in any manner with a competitor, is an unreasonable restraint of trade. The clause contains no limitations in time and area.

We hold that such a clause is void and unenforceable as an unreasonable restraint of trade unless there are reasonable limitations in time and area. Since there are none here, we grant a summary judgment for plaintiffs.

I—FACTS

This is a class action suit brought by persons who have been employees of Clean-Wear Service Company, or its parent company, Cadillac Overall

Supply Company. The plaintiffs seek to recover benefits which had vested under a profit-sharing retirement plan unilaterally established by their employer and administered by the National Bank of Detroit.

The case comes to us on the pleadings only as the appeal is from the denial of the plaintiffs' motion for summary judgment.

Each of the named plaintiffs had worked for one of the defendant-companies for a period of at least 18 years. Plaintiff Arthur Woodward had served for part of his tenure with Cadillac Overall Supply Co. as a manager and division manager. William Page, now deceased, and formerly husband of plaintiff Mabel Page, was employed by the same company, and had served as a branch manager. The specific responsibilities of the other named plaintiffs are unclear.

Each of the named plaintiffs had vested rights to benefits under the profit-sharing plan, ranging from $5,863.64 to $18,683.09. These benefits were declared forfeit under a provision of the retirement plan which reads as follows:

"2. In the event that any participant shall enter the employment of any competitor of any Company without the written approval of such Company, or become associated in any manner with such a competitor in the opinion of the Advisory Committee, whose decision shall be final, before such participant has received the full amount in his segregated account or accounts to which he otherwise would be entitled, such participant shall lose all right to any balance in such account and the interest of such participant in any Trust shall at once cease and terminate and be allocated to other eligible employees covered by such Trust in accordance with the provisions of Section 3 below."

Defendants allege that plaintiffs, upon resigning

from the employ of defendants, entered into the employment of competing firms. In two cases, it is alleged that the plaintiffs established their own businesses in the same area as they had worked for their former employer, and in one of those cases, it is alleged that plaintiff later sold that business and entered into an agreement not to compete.

After notification of the forfeiture, plaintiffs filed a complaint in the Wayne County Circuit Court seeking recovery of the forfeited benefits. Plaintiffs brought a motion for summary judgment as to liability only, which was denied, solely on the authority of *Couch v Administrative Committee of Difco Lab, Inc,* 44 Mich App 44; 205 NW2d 24 (1972).

The trial court certified, in accordance with GCR 1963, 806.3(1)(a)(ii), that his order involved a controlling question of law as to which there was a substantial ground for difference of opinion, and that an appeal from the order might materially advance the ultimate termination of litigation.

Plaintiffs were denied leave to appeal the denial of summary judgment by the Court of Appeals on May 30, 1974. Leave to appeal to the Supreme Court was granted on October 15, 1974.

## II—The Validity of the Forfeiture Clause Under MCLA 445.761 is Not Considered

Plaintiffs argue that the non-competition forfeiture clause before us is void and unenforceable as a matter of law under both statutory and common law.

Resolution of the claim that the clause is void under MCLA 445.761; MSA 28.61[1] would require

---

[1] MCLA 445.761; MSA 28.61 reads as follows:
"All agreements and contracts by which any person, co-partnership

determination of whether non-competition forfeiture clauses in general are agreements or contracts not to engage in an employment, and therefore void under the statute.

Resolution of the claim that the clause is void under common law poses a narrower question: Is a non-competition forfeiture clause in an employee retirement profit-sharing plan unilaterally established by an employer which provides that retirement benefits are forfeited if the employee enters into the employment of a competitor void unless it provides for reasonable limitations in time and area?

We find it unnecessary for the disposition of this case to resolve the broader statutory issue, and we refrain from doing so.

## III—THE UNLIMITED NON-COMPETITION FORFEITURE CLAUSE AS AN UNREASONABLE RESTRAINT OF TRADE

### A. *The Non-Competition Forfeiture Clause is a Contract in Restraint of Trade*

At the threshold, there seems little question

---

or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

MCLA 445.766; MSA 28.66 creates certain exceptions:

"This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly; nor to any contract of employment under which the employer furnishes or discloses to the employe a list of customers or patrons, commonly called a route list, within certain territory in which such employe is to work, in which contract the employe agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of business for a period of 90 days after the termination of such contract or services."

that a non-competition forfeiture clause is a re-straint of trade. In *Stoia v Miskinis,* 298 Mich 105; 298 NW 469 (1941), this Court, quoting with approval from Williston on Contracts, included in the definition of a restraint on trade the following:

" 'Any bargain or contract which purports to limit in any way the right of either party to work or to do business, whether as to the character of the work or business, its place, the manner in which it shall be done, or the price which shall be demanded for it, may be called a bargain or contract in restraint of trade.' 5 Williston on Contracts (rev ed), p 4576, § 1633." 298 Mich 117–118.

This finding raises two questions. First, is the non-competition clause part of a bargain or contract? Second, if so, does it purport to limit in any way the right of either party to work or to do business? We answer both questions in the affirmative.

In establishing a profit-sharing plan, Clean-Wear and Cadillac offered to make certain payments for the benefit of its salaried employees in consideration of the employee's continuing employment and services. The employees, by performing the desired services, accepted that offer. Thus, the employees have enforceable contractual rights under the plan, subject to the valid provisions of the plan.[2]

---

[2] *See* 1A Corbin on Contracts, § 153, pp 18–20; *Couch v Difco Labs, Inc,* 44 Mich App 44, 47; 205 NW2d 24 (1972); *Cain v Allen Electric & Equipment Co,* 346 Mich 568, 579; 78 NW2d 296 (1956) (employer's creation in writing of policy to pay severance pay constituted an offer of a contract which the employee had accepted by continuing in the employ of the employer); *Psutka v Michigan Alkali Co,* 274 Mich 318; 264 NW 385 (1936) (ample consideration to defendants to support their benefit plan as a contract with their employees is found in the attraction of more competent workers to defendants' employ, the inducement of better and more continuous service and the avoidance of expense of labor turnover); Annotation: *Rights and Liabilities as Between Employer and Employee with Respect to General Bonus or*

The non-competitive forfeiture clause is part of that contract, and we must determine its enforceability.

As to the second question, there can be very little doubt that the non-competition clause purports to "limit in any way the right" of the employee "to work or to do business". A clause such as that before us which penalizes an employee for entering into the employment of a competitor or associating in any manner with a competitor at any time or any place constitutes a severe limitation on the right of an employee to work or do business.[3]

## B. *What Is An Unreasonable Restraint of Trade: Balancing Test*

It has been long established in English and Michigan common law that a balancing test is used to test the reasonableness or unreasonableness of a contractual restraint of trade. In determining the reasonableness of a restraint under this test, the court weighs 1) the interests of the party in favor of whom the restraint runs; 2) the interests of the party being restrained; and 3) the interests of the public. *Mitchel v Reynolds,* 1 P Wms 181; 24 Eng Rep 347 (Q B 1711); *Hubbard v*

---

*Profit Sharing Plans,* 81 ALR2d 1066, 1069; Note, *Pension Plans and the Rights of the Retired Worker,* 70 Colum L Rev 909, 917 (1970).

[3] The findings of the United States Congress in enacting the comprehensive Employee Retirement Income Security Act of 1974, 29 USC 1001 *et seq.,* provide strong evidence of this deterrent effect. After numerous public hearings and hundreds of pages of testimony, Congress concluded that the forfeitability of pension and profit-sharing retirement income interfered "with the mobility of labor, to the detriment of the economy".

*See Almers v South Carolina National Bank of Charleston,* 265 SC 48; 217 SE2d 135 (1975), quoting from US Code Cong & Adm News, vol 3, p 4679 (1974).

*Miller,* 27 Mich 15, 19; 15 Am Rep 153 (1873).[4]

As shall be discussed, the specific definition and application of the balancing test has varied according to the type of restraint being examined. Specifically, covenants not to compete ancillary to an employment contract have often been treated differently under the balancing test from covenants not to compete incident to the sale of a business in two respects.

First, the reasonableness of employee restraint has been generally scrutinized more rigorously than the reasonableness of the covenant not to compete incident to the sale of a business.

Second, courts examining the employee restraint have often required that *both* the language of the covenant and the application of the restraint to the specific facts of the case be reasonable. Courts examining covenants not to compete incident to the sale of a business have almost always focused only on the reasonableness of the application of the restraint to the specific facts of the case.

The precise definition and manner of application of the balancing test called for in non-competition forfeiture clause cases is unsettled in Michigan law.[5]

---

[4] Professor Blake, in his article, *Employee Agreements Not to Compete,* 73 Harv L Rev 625 (1960) provides a thorough and enlightening description of the history of the law of contractual restraints of trade. In this article, Prof. Blake indicates that the *Mitchel* opinion, *supra,* laid the foundation for the subsequent use of the balancing test:

"*Mitchel v Reynolds* is a remarkable opinion for its method of balancing the social utility of certain types of restraints against their possible undesirable effects upon the covenantor and the public, and for its formulation of a rule of reason. There is very little in the modern approach to the problem for which a basis cannot be found in Macclesfield's opinion." 73 Harv L Rev 625, 630–631.

[5] The development of common law in Michigan on restraint of trade has been limited due to the early enactment in 1905 of MCLA 445.761; MSA 28.61 and accompanying statutes. Contractual restraint of trade cases have most often been handled under these statutes. The

We consider below the reasons underlying the requirements of strict scrutiny and reasonable limitations in the language of the covenant not to compete incident to an employee contract. These reasons are clearly applicable to cases involving non-competition forfeiture clauses. We therefore conclude that courts examining such clauses must subject the clause to strict scrutiny and require that both the language of the clause and the application of the restraint be reasonable.

Under this approach, a non-competition forfeiture clause is a reasonable restraint of trade only if it 1) is no greater than is necessary for the protection of the legitimate interests of the employer; 2) does not impose undue hardship on the employee; and 3) is not injurious to the interests of the public. Once the employee establishes that there is a restraint, the burden is placed on the employer to show the validity of the restraint.

## 1) *Strict Scrutiny for Employee Restraints*

As first suggested in the landmark *Mitchel* opinion, *supra,* the reasonableness of a covenant not to compete incident to the sale of a business has been

---

limited authority available from Michigan cases does not seem to resolve the question of which definition of reasonableness should be used in non-competition forfeiture clause cases.

In *Tobin v General Motors Corp,* 17 Mich App 475; 169 NW2d 644 (1969), the Court of Appeals held that sections in a bonus award and stock option plan providing that the employee lost any right to "earn out" benefits under the plan did not constitute an unreasonable restraint of trade. The Court did not discuss the test of reasonableness to be applied, but rather relied on *O'Madigan v General Motors Corp,* 312 F2d 250 (CA 8, 1963) which upheld the plan for the reasons stated in the district court opinion, 202 F Supp 190 (ED Mo, 1961). The district court seems to have relied on the "employee's choice" test which is criticized in discussion below.

*See also Bannert v American Can Co,* 525 F2d 104 (CA 6, 1975) which relied on *Tobin, supra,* and dicta in *Couch v Difco, supra,* in upholding a non-competition forfeiture clause.

generally scrutinized less rigorously than the reasonableness of such a covenant when incident to an employment contract.[6]

The greater deference granted a covenant not to compete incident to a sale of a business is rooted primarily in the recognition of the substantially equal bargaining power of freely contracting parties in such cases.[7] As stated in *Beal v Chase*, 31 Mich 490, 523 (1875):

" * * * where such a contract is the result of fair bargaining, the reasonable presumption is that each party, in view of all the circumstances which were within his own intimate knowledge, was able to see how the bargain was to result to his advantage, and that the party resigning the business did not do so without being fully satisfied that he was receiving full equivalent, which would be more advantageous to him than the property and the business sold. And where a man has fully decided to sell his business to take up another, can there be any reason of state policy why he should be precluded from bargaining for the additional consideration he can obtain by agreeing not to engage in the same business? * * * If there be any sufficient reason, it was not presented on the argument, and is not hinted at in any of the cases to which our attention has been directed."

Moreover, there must be some form of restraint on the transferor of good will in order for the transferee to get the full value of what is being acquired.[8]

[6] *See Mitchel v Reynolds*, 1 P Wms 181, 190; 24 Eng Rep 347, 350 and *Employee Agreements Not to Compete*, 73 Harv L Rev 625, 647 (1960).

[7] *See Arthur Murray Dance Studios of Cleveland, Inc v Witter*, 62 Ohio L Abs 17; 105 NE2d 685, 704 (Common Pleas, 1952), quoted on p 393 of this opinion. *See also Employee Agreements Not to Compete*, 73 Harv L Rev 625, 647.

[8] *Arthur Murray Dance Studios of Cleveland, Inc v Witter*, 105 NE2d 685, 703–704, and 73 Harv L Rev 625, 646.

An employee subject to a covenant not to compete included in his employment contract is in a much different situation from the seller of a business who binds himself or herself to such a covenant in exchange for consideration. The difference in the two situations, well-described in a scholarly opinion, *Arthur Murray Dance Studios of Cleveland, Inc v Witter,* 62 Ohio L Abs 17; 105 NE2d 685, 703–704 (Common Pleas, 1952), has led courts to scrutinize the reasonableness of the employee restraint more closely:

"[T]he snow-balling weight of authority in England and the United States recognizes a distinction. In contrasting the employee covenant with the sale covenant, some of the typical pronouncements are—the employee covenant is more critically examined, more strictly construed * * * . The following are some of the reasons given for making the above distinction. The average, individual employee has little but his labor to sell or to use to make a living. He is often in urgent need of selling it and in no position to object to boiler plate restrictive covenants placed before him to sign. To him, the right to work and support his family is the most important right he possesses. His individual bargaining power is seldom equal to that of his employer. * * * He is more apt than the seller to be coerced into an oppressive agreement. Under pressure of need and with little opportunity for choice, he is more likely than the seller to make a rash, improvident promise that, for the sake of present gain, may tend to impair his power to earn a living, impoverish him, render him a public charge or deprive the community of his skill and training. The seller has the proceeds of sale on which to live during his period of readjustment. A seller is usually paid an increased price for agreeing to a period of abstention. The abstention is a part of the thing sold and is often absolutely necessary in order to secure to the buyer the things he has bought. Usually the employee gets no increased compensation for agreeing to

the abstention; it is usually based on no other consideration than the employment itself."

The reasons for the application of strict scrutiny to an employee restraint in the form of a noncompetition forfeiture clause are at least as compelling.

First, in the establishment of a retirement plan and, specifically, a non-competitive forfeiture clause, there is often an imbalance in the bargaining power which invites employer over-reaching. In many instances, including the case before us, the retirement plan is not negotiated at all, being unilaterally established by the employer. This is particularly the case where the retirement plan contains a non-competition forfeiture clause, for such plans tend to cover higher level employees who tend not to be unionized.

Second, the forfeiture clause is not necessary for the employer to get the value of the thing primarily being acquired by the employment contract and retirement plan, *i.e.,* the continued services of the employee.

Third, the non-competition forfeiture clause usually affects a far wider range of people, including employees who are not before the court, than does a covenant not to compete ancillary to the sale of a business where only the buyer and seller are directly involved.[9]

In passing, we should recognize that the United

---

[9] *See Budget Rent-a-Car Corp v Fein,* 342 F2d 509, 517 (CA5, 1965), where a *limited* restraint on a competition ancillary to a standard franchise agreement was held an unreasonable restraint of trade. The court in *Budget* relied in part on the fact that the agreement, extracted by the parent car rental company from anyone who desired a franchise, affected "a far wider range of people than a covenant ancillary to a sale of business where only two parties—the seller and the buyer—are involved".

For further discussion of the importance of the effect of a non-competition forfeiture clause on employees not before the court, *see* p 399 of this opinion.

States Congress after much consideration enacted the Employee Retirement Income Security Act of 1974, 29 USC 1001 *et seq.,* and established a Federal policy regarding non-competition forfeiture clauses. The central thrust of the new act is to encourage the creation of private retirement programs through tax incentives and to protect the employee's rights under these plans.[10] Under the act, benefits must vest within certain prescribed time limitations. 29 USC 1053(a). Once the right to benefits vests, it cannot be forfeited, with certain exceptions not applicable to this case. Specifically, Congress provided that under the act a vested right is not to be forfeited because the employee later went to work for a competitor. United States Code Cong and Admin News, House Report No 93-807, pp 4724–4726 (1974).

For all of these reasons, we conclude that the

---

[10] The White House Conference on Aging published in 1971 a study entitled *Income* which provides valuable data on the financial situation of people as they near retirement age, and indicates that the concern of Congress was well-founded.

For example, according to a study by the U. S. Bureau of Census, the median income of families in the United States in 1967 peaked at $8,320 where the age of the head of the household fell between the ages of 45 and 54, then fell radically, plummeting to $3,377 where the head of the household was 65 or over. *See Income,* p 56.

In another study prepared by the U. S. Department of Health, Education and Welfare, it was revealed that the median income of families headed by persons 65 and above was consistently less than half of that of families headed by people from 14 to 64 over the period 1960–1969. Similar results were found in computing the median income of unrelated individuals.

A third study of income sources of people 65 and over revealed that private pension plans constitute a relatively minor source of income in comparison with government income support. In 1967, for example, private pensions represented but 5% of the total income for this group, while income from the public sector represented 38%. It is this kind of imbalance that the recent Federal statute is intended to remedy. Widespread forfeiture of retirement benefits increases the need for government assistance, and increases the chances that assistance programs, such as the Federal Social Security program, will collapse under the burden. Yung-Ping Chen & the Technical Committee on Income *Income: Background & Issues* (Washington, D C: White House Conference on Aging, 1971).

reasonableness of non-competition forfeiture clauses must be strictly scrutinized.

On the basis of this conclusion, we specifically reject the "employee's choice" test often used by courts opting for less than strict scrutiny of these clauses.[11] Under this test, a court in determining the reasonableness of the clause focuses on what is termed the voluntariness of the employee's choice to forfeit retirement benefits, without balancing the interests of the employer, the employees and the public to determine the fairness of the alternatives.

Chief Justice, then Judge, Warren Burger sharply criticized the use of such a test in *Neuffer v Bakery & Confectionery Workers International Union,* 113 US App DC 334; 307 F2d 671 (1962). In his well and strongly stated dissent, he first objected that "the majority opinion construes the contract most strictly against the employee when the law requires we construe it strictly against the employer who seeks to exact the forfeiture". 307 F2d 671, 673-674.

But Judge Burger's central concern was that the majority's approach ignored the harshness or unfairness of the employee's forfeiture. Noting the harshness of the application of the forfeiture clause in that case, he stated as follows:

"I can scarcely believe these factors are irrelevant when we deal with legal policy, for the law relating to forfeitures is essentially a policy matter in which equi-

---

[11] For "employee's choice" cases, *see Kristt v Whelan,* 4 App Div 2d 195; 164 NYS2d 239 (1957), *aff'd,* 5 NY2d 807; 155 NE2d 116; 181 NYS2d 205 (1958); *Alldredge v City National Bank & Trust Co of Kansas City,* 468 SW2d 1, 4 (Mo, 1971); *Van Pelt v Berefco Inc,* 60 Ill App 2d 415; 208 NE2d 858, 865 (1965); *Brown Stove Works, Inc v Kimsey,* 119 Ga App 453; 167 SE2d 693, 695 (1969); *Rochester Corp v Rochester,* 450 F2d 118, 123 (CA 4, 1971).

table considerations have the dominant role." 307 F2d 671, 674–675.

A similar objection was made by the authors of a recent law review article:[12]

"This *[Neuffer]* test seems to imply, however, that the employee has a choice: He may remain restricted, no matter how traditionally unfair the restrictions are, or he may compete and lose whatever interests he may have had, regardless of how innocuous such competition may be and insubstantial the interest foregone. The *Neuffer* court apparently assumed only that the contractual restrictions were reasonable and not against public policy, reaching its decision without weighing the equities of the parties." 57 Iowa L Rev 75, 87 (1971).

In essence, the "employee's choice" test would make every non-competition forfeiture clause reasonable, no matter how harsh or unfair, because the employee is always free to take the consequences of breaching the clause.

### 2) A Non-Competition Forfeiture Clause Must Be Reasonable in its Language

The purpose of a contractual restraint of trade is to protect certain interests of the party in favor of whom the restraint runs. When the contractual language creates a restraint beyond that which is necessary to protect the interests intended to be protected or the legitimate interests of the party benefited, the clause may be said to be overbroad.

---

[12] *See* Koehn & Ptacek, *Employer Protection Against Loss of the Key Employee,* 57 Iowa L Rev 75, 86–88 (1971). *See also* Comment, *Forfeiture of Pension Benefits for Violation of Covenants Not to Compete,* 61 Nw UL Rev 290, 304–305 (1966). The second article does not place *Neuffer* among the cases applying the employee's choice test, but, using *Kristt v Whelan, supra,* as the exemplary case for this test, the author mounts an attack very similar to that presented by Judge Burger and the authors of *Employer Protection.*

A court confronted with an overbroad contractual restraint of trade must decide whether to enforce the restraint, in spite of its overbroad *language,* if the *application* of the restraint to the party before the court who is alleged to be subject to the restraint is reasonable, given the nature of this party's conduct, and its effect on the party who is to be protected by the restraint.

In the context of a sale of a business, courts have almost uniformly enforced an overbroad covenant not to compete in such situations, often reforming the language of the covenant to form a more reasonable restraint in terms of the interest to be protected.

This has been the long-established practice of Michigan courts in dealing with covenants not to compete incident to the sale of a business. In *Hubbard, supra,* the court was confronted with a covenant not to compete unlimited in time and area, and proceeded to interpret the restriction to have reasonable limits intended by the parties.

In *Hopkins v Crantz,* 334 Mich 300; 54 NW2d 671 (1952), the Court, sitting as an equity court, in deciding whether to grant an injunction against a party who had breached a covenant not to compete incident to the sale of a business containing no limit in area, simply asserted its authority as follows:

"The court has the authority to enter a decree according to the facts so as to make the area of restriction a reasonable one." 334 Mich 300, 304.

There is no mention of limiting the power to reform the covenant to expressions of the intent of the parties.

However, there is no authority in Michigan as to

the treatment of overbroad covenants not to compete ancillary to an employment contract partially for the simple reason that any such covenant, no matter how limited, has been illegal under MCLA 445.761; MSA 28.61 since 1905.

In other jurisdictions, the issue of whether an overbroad covenant not to compete incident to an employee contract should be enforced when the employee's competition falls within a narrow, reasonable restraint has been the subject of considerable controversy over a period of decades.[13]

While we need not discuss this precise issue, we think that there are important differences between a covenant not to compete incident to the sale of a business and a non-competition forfeiture clause that persuade us that the latter should not be enforced where the language of the restraint is broader than is necessary to protect the legitimate interests of the employer.

First, as mentioned above, a non-competition forfeiture clause usually affects a broad range of people, including employees covered by the clause who are not before the court.

Some of these employees are unreasonably deterred by the overbroad clause from taking legitimate employment. Commentators have strongly objected to the injustice of such a situation in arguing against the application or reformation of the overbroad clause.

The author of a recent law review article[14] stated his objections as follows:

---

[13] For a description of some of the controversy that has been centered on the issue of severability of restraints of trade, *see* 73 Harv L Rev 625, 681–684, and the cases cited therein.

*See also* 41 ALR 2d 15 and 43 ALR 2d 94, annotations indicating that there remains considerable dispute on this issue.

[14] 61 Nw U L Rev 290, 298–299 (1966). *See also* Prof. Blake's argument severing or reforming overbroad employee restraints in *Employee Agreements Not to Compete,* 73 Harv L Rev 625, 683–684, and also *Employer Protection Against Loss of a Key Employee,* 57

"Where the restraint on competition is framed in broad terms, the courts often enforce the agreement, if the employee's competition falls within a narrower and reasonable boundary. While the judicial narrowing of a covenant not to compete, thereby making it enforceable, may be desirable when the clause is ancillary to an employment contract, sale of land or sale of business, such judicial redrafting is not desirable in the case of a non-competition restraint ancillary to a pension plan. For every covenant challenged in court, there are thousands which exercise an *in terrorem* effect on employees who simply respect their contractual obligations or who do not wish to take the risk of violating the covenant, going to court, and possibly losing their pensions. While this is true of any non-competition covenant ancillary to a contract, the *in terrorem* pressure seems much greater where forfeiture of such a vital interest as a pension is involved. The pension often represents security for the employee in his later years, which he cannot risk losing by competing and then testing the forfeiture clause in the courts. In contrast, the only reprisals for breach of a covenant not to compete ancillary to an employment contract, sale of land, or sale of business are injunctions and sometimes liquidated damages.

"When a broad covenant, such as that involved in *Neuffer,* is before the courts, the burden should be on the employer to show that the restraint on the employee's right to compete was reasonable and protected a legitimate interest of the employer. The courts should not aid an employer by reforming an unreasonable and broad restriction, ancillary to a pension plan, into a legally enforceable one. If courts would refuse to enforce broad covenants not to compete, such a practice would discourage the drafting of unreasonable covenants and the resulting widespread compliance by employees in their retirement periods with potentially illegal restraints on competition."

Iowa L Rev 75, 94–95 (1971) which similarly argues against enforcement where the employer has been guilty of consciously overreaching.

To the contrary *see Lavey v Edwards,* 264 Or 331; 505 P2d 342 (1973).

In addition to the *in terrorem* effect on employees who comply with the overbroad restraint, there is the matter of those employees who forfeit their benefits upon the unreasonable application of such a clause who never reach the courts.[15]

Moreover, an overbroad clause heightens the ill effect of non-competition forfeiture clauses on the public interest, deterring competition and employee mobility even where it serves no legitimate interest of the employer.

In sum, while enforcement of an overbroad covenant not to compete incident to the sale of a business substantially affects only the parties before the court, enforcement of an overbroad non-competition forfeiture clause in the light of the specific facts of the case may unfairly and harshly affect employees not before the court. Furthermore, enforcement of such a clause encourages employers to continue to use overbroad language to the detriment of the public interest.

A second difference between a covenant not to compete incident to the sale of a business and a non-competition forfeiture clause weighs against enforcing an overbroad example of the forfeiture clause. As discussed above, a restraint on competition from the seller of a business is very often

---

[15] In this regard, it is notable that even a non-competition forfeiture clause which contains reasonable limits is often in some degree unfair in its application to employees who breach it. This is so because there is usually no correlation between the amount forfeited and the damage which may be done to the employer.

The employee who has worked loyally for the employer for a long period of time, and then for a competitor for a short period of time, is penalized more harshly than the employee who stays with the employer a relatively short time before moving on to a competitor. The former employee not only forfeits more benefits, but also has little or no chance of vesting new pension rights after forfeiture.

These problems make it all the more important that non-competition forfeiture clauses be carefully tailored so as to be applied, to as great an extent as possible, only in those cases where it is necessary to serve the legitimate interests of the employer.

necessary if the buyer is to get the value of what he paid for. To allow the seller to breach the covenant not to compete because of the overbreadth of the covenant after the buyer had paid consideration substantially for seller's promise not to compete, would grossly distort the agreement reached by the two bargaining parties.

In contrast, a non-competition forfeiture clause is not necessary for the employer to get the major value of what he pays for in entering into an employment contract and establishing a retirement program, *i.e.,* the continued services of his employees and the tax benefits granted businesses establishing retirement programs. Refusal to enforce an overbroad non-competition forfeiture clause does not, therefore, grossly distort the overall agreement between employer and employees.

A third and final difference supporting non-enforcement of an overbroad non-competition forfeiture clause lies in the fact that the sale of a business is almost always negotiated between parties with equivalent bargaining power. The establishment of a retirement program by an employer is, as discussed above, often unilateral, or the result of bargaining between parties of unequal power. To enforce an overbroad non-competition forfeiture clause in this content would be to aid an employer who has abused his power in creating an unreasonable restraint on employees in the name of binding an employee to an unreasonable agreement in which he or she had little or no say.

For all of these reasons, we conclude that in order for a non-competition forfeiture clause to be reasonable and enforceable by the employer, both the language and the application of the clause to the parties before the court must be reasonable.

In the light of our conclusions regarding the

requirements of strict scrutiny and reasonable language in non-competition forfeiture clause cases, we agree with those courts who, in examining the reasonableness of employee restraints, and non-competition forfeiture clauses specifically, have applied the following test.[16]

A non-competition forfeiture clause is reasonable only if the restraint 1) is no greater than is necessary for the protection of the employer in some legitimate interest; 2) does not impose undue hardship on the employee; and 3) is not injurious to the interests of the public. The burden is placed on the employer to show the validity of the restraint.[17]

## C. The Absolutely Unlimited Non-Competition Forfeiture Clause is Unreasonable Per Se

Given this test of reasonableness, an unnegotiated forfeiture clause in a pension plan which restrains *all* forms of competitive activity for an unlimited time and in an unlimited area will be unreasonable per se and always unenforceable. This is so because such a clause will necessarily be broader than is necessary to protect the legitimate interests of the employer and contrary to the public interest.

A very broad restraint may well be reasonable if specifically tailored to protect certain vital inter-

___

[16] *Food Fair Stores, Inc v Greeley,* 264 Md 105; 285 A2d 632, 639–640 (1972); *Van Hosen v Bankers Trust Co,* 200 NW2d 504, 508–509 (Iowa, 1972); *Almers v South Carolina National Bank of Charleston,* 265 SC 48; 217 SE2d 135 (1975); *Employee Agreements Not to Compete,* 73 Harv L Rev 625, 646–651 and the cases cited therein.

[17] Placing the burden on the employer is sensible not only due to the strict scrutiny given employee restraints, but also because the employer has a more complete view of the interests of the business than an employee, and thus is in a better position to show a restraint is no more burdensome than needed to protect the employer's legitimate interest. *See* 73 Harv L Rev 625, 648, fn 76, and the cases cited therein, and also 61 Nw U L Rev 290, 299 (1966).

ests of a business. For example, a business may
develop certain very important information which
it wishes to keep from its competitors. Of primary
importance may be technical information in which
the company has invested a great deal of research
and expense. In addition a business may wish to
protect its developmental strategies, its customer
lists, and the like. It may be vital to a business to
keep these valuable assets from leaking to a com-
petitor. Moreover, these assets are generally the
product of the company as a collective entity, so
that the company's interest in such information
would almost always be superior to that of any
individual employee.

Courts, in general, have been sensitive to the
importance of these business interests, and have
often upheld broad employee restraints protecting
these interests.[18]

At another level, a non-competition forfeiture
clause may be tailored to protect certain things
which, while important, may not be as vital to the
well-being of the business, and to which an em-
ployee may lay a claim of interest equal to or
superior to his employer. For example, the cost of
training an employee represents an investment by
the employer, as does the cost of providing the
employee a chance to learn through on-the-job
experience. Similarly, a company may pay an
employee to develop a rapport with certain cus-
tomers.

---

[18] *See* cases cited in 73 Harv L Rev 625, 667–674 and in 41 ALR2d
15, parts III–VII. These sources provide a good survey of what courts
have felt to be a reasonable employee restraint, and the factors which
they have taken into account when making a determination of
reasonableness.

It is also notable that a duty exists on the part of the employee to
refrain from divulging his employer's trade secrets to a competitor
even in the absence of an express contractual covenant according to
the 2 Restatement Agency, 2d, § 396(b).

In such situations, the company's investment must be balanced against the claim of the employee that general knowledge or skill gained through training or on-the-job experience, or a personal rapport established with customers represents a substantial personal investment which makes his claim of interest superior to that of the employer upon termination of employment.[19]

A non-competition forfeiture clause designed to protect such business interests must have narrower limits in time and area to be reasonable.

Finally, a non-competition clause may restrain the employee from all forms of competition with the former employer, independent of any of the factors mentioned above. In such a situation, the importance of the claimed business interest is considerably lessened, and inferior in any event to the employee's claimed right to compete and the public's interest in competition and a mobile labor force.

A clause, restraining the employer from all forms of competitive activity and containing no limitations in time and area whatsoever, where unnegotiated or negotiated where the employee was substantially disadvantaged in bargaining power, will always be unreasonable in that it is overbroad and contrary to the public interest.

This conclusion is buttressed by the fact that courts applying a test of reasonableness of the type we have accepted today have uniformly held that an unlimited non-competition forfeiture clause is an unreasonable restraint of trade.

The Supreme Court of South Carolina in a very recent opinion, *Almers v South Carolina National*

---

[19] *See* employee restraint cases cited in 73 Harv L Rev 625, 651–667, and in 43 ALR2d 94, parts III–VIII.

*Bank of Charleston,* 265 SC 48; 217 SE2d 135, 139 (1975), held as follows:

" * * * we hold that a forfeiture clause in a profit or pension plan which provides that upon employment with a competitor a participant is divested of rights under the plan is invalid unless it contains reasonable time and geographic limitations."

The clause invalidated in that case was unlimited in time and area.

In *Food Fair Stores, Inc v Greeley,* 264 Md 105; 285 A2d 632, 639–640 (1972), a non-competition forfeiture clause in a pension plan which was unlimited in time and area was similarly held an unreasonable restraint of trade.

The Supreme Court of Iowa, in *Van Hosen v Bankers Trust Co,* 200 NW2d 504 (Iowa, 1972), held that a non-competition forfeiture clause in a pension plan limited in area to one county, but unlimited in time, was "so unreasonable as to be in violation of public policy". 200 NW2d 504, 509.

It is also significant that some states have promulgated statutes which specifically limit the validity of non-competition forfeiture clauses. Moreover, under these statutes, unlimited non-competition forfeiture clauses have invariably been held invalid.

*Flammer v Patton,* 245 So 2d 854 (Fla, 1971), held that a non-competition forfeiture clause in a retirement plan which was unlimited in time and area breached a Florida statute which provided that every contract by which anyone is restrained from exercising a lawful profession or business of any kind, excepting employment agreements restraining a former employee from engaging in a similar business and soliciting old customers within a reasonably limited time and area, and partnership agreements where partners agree not to engage in similar business after dissolution of

the partnership within a reasonably limited time and area, is void to the extent that it does not contain the noted reasonable restrictions. Fla Stat Ann § 542.12.

In *Muggill v Reuben H Donnelley Corp,* 62 Cal 2d 239; 42 Cal Rptr 107; 398 P2d 147; 18 ALR 3d 1241 (1965), Judge Traynor held that an unlimited non-competition forfeiture clause was void under a California statute very similar to the Florida statute described above.

In *Estate of Schroeder v Gateway Transportation Corp,* 53 Wis 2d 59; 191 NW2d 860, 865 (1971), the Wisconsin Supreme Court first held that a non-competition forfeiture clause was covered under the Wisconsin statute governing covenants not to compete, and then ruled that the clause was void because it did not have the required reasonable limitations, being unlimited in application to time and area. See also *Holsen v Marshall & Ilsley Bank,* 52 Wis 2d 281; 190 NW2d 189, 192 (1971), and *Union Central Life Insurance Co v Balistrieri,* 19 Wis 2d 265; 120 NW2d 126, 129 (1963).

## IV—CONCLUSION

We hold that a clause in an employee retirement profit-sharing plan unilaterally established by the employer, or negotiated where the employee was substantially disadvantaged in bargaining power, which provides that a participant in the plan forfeits all rights to benefits if the employee enters into the employment of a competitor is void and unenforceable as a matter of law, where there are no limitations whatever in time and area.

The clause before us is such a clause, and we therefore reverse the trial court, concluding that a summary judgment for plaintiff must be granted.

KAVANAGH, C. J., concurred with WILLIAMS, J.